# Pavitt *v.* Lehigh Valley R. R., Appellant.

*Railroads—Common carriers—Bill of lading—Deviation from contract—Notice of claim—Public policy—Fraud.*

If a railroad company deviates from a contract to transport live stock by shipping it by freight service instead of passenger service as agreed upon, and the stock is injured by the delay and rougher service, the company cannot avail itself of the stipulations in the contract relieving it from liability as insurer at common law; but such deviation does not relieve

the shipper from notifying the company of his claim for damages within five days, where the contract provides for such notice.

The reason for the rule holding the carrier to the common law accountability is public policy to prevent fraud on the shipper. While the reason for the rule would sweep away every stipulation of the contract in derogation of the duty imposed on the carrier, it has no application to a provision referring to an act on the part of the shipper subsequent to delivery—such provision being for the protection of the carrier against fraud on the part of the shipper. To abrogate such provision would open the door to fraud.

*Practice—Trial—Failure to charge on evidence—Appeal.*

In such a case the Supreme Court will not sustain a verdict for a shipper who has failed to give notice within the time required by the contract, even where there is evidence of waiver of such notice by the company, if it appears that no point was presented by plaintiff on the question of waiver, and the charge of the court contained no allusion to it; but a new venire will be awarded.

Argued Jan. 16, 1893. Appeal, No. 53, July T., 1892, by defendant, from judgment of C. P. No. 2, Phila. Co., on verdict for plaintiff, Edwin H. Pavitt. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and DEAN, JJ.

Assumpsit on contract for carriage of live stock.

The facts appear by the opinion of the Supreme Court.

At the trial defendant presented these points:

" 8. That by the terms of the contract of shipment it is provided that no claim for damages which should accrue to the plaintiff should be allowed or paid, or suit brought in any court, unless a claim for such loss or damage should be made in writing verified by an affidavit of the plaintiff or his agent, and delivered to some proper officer or general agent of the defendant within five days from the time the horses were removed from the cars, and as this condition is binding upon the plaintiff, and he has failed to show a compliance therewith, he is not entitled to recover any damages for alleged injury to the horses or loss resulting from the detention of the car." Refused. [1]

" 9. Under the provisions of the contract of shipment in question the plaintiff is not entitled to recover, and your verdict should be for the defendant." Refused. [2]

Verdict and judgment for plaintiff for $500. Defendant appealed.

*Errors assigned* were (1, 2) above instructions, quoting them.

*Thomas Hart, Jr., Francis I. Gowen* with him, for appellant.
—The provision for notice is a reasonable and proper regula-
tion of a common carrier: Weir v. Express Co., 5 Phila. 355;
Wolf v. Western Union Tel. Co., 62 Pa. 83; Western Union
Telegraph Co. v. Stevenson, 128 Pa. 442; Express Co. v.
Caldwell, 21 Wallace, 264; Kyle v. B. & L. H. Ry., 16 Upper
Canada C. P. 76; Lewis v. Great Western R. R., 5 H. & N.
867; Mahomed Ismailgee v. B. I. S. N. Co., 9 Cal. W. R. 396;
Simons v. Great Western R. R., 18 C. B. 804; Grand Trunk
R. R. v. McMillan, 16 Can. S. C. R. 543; Dawson v. St Louis
R. R., 76 Mo. 514; Rooth v. N. E. R. R., L. R. 2 Exch. 173;
Myrick v. M. C. R. R., 107 U. S. 102; Gogin v. Kansas R. R.,
12 Kans. 416; Sprague v. Mo. Pac. R. R., 34 Kans. 347;
Rice v. Kansas R. R., 63 Mo. 314; St. Louis R. R. v. Cleary,
77 Mo. 634; Ormsby v. Union Pacific R. R., 4 Fed. R. 170;
Heimann v. West. U. Tel. Co., 57 Wisc. 562.

There is no variance between the express " limited liability
stock contract" entered into between the parties, and what ap-
pears to have been the contemporaneous agreement between
the same parties for the rate of transportation and the method
of its performance. The printed contract does not speak of
either of these subjects. There is no change made in the
printed contract by the other. This is merely a case in which
for a new or additional consideration an additional obligation
as to the method of performance is undertaken: McCauley v.
Keller, 130 Pa. 53; O'Reilly v. Kerns, 52 Pa. 214; Hostetter
v. Pittsburgh, 107 Pa. 419; Spangler v. Springer, 22 Pa. 454;
Micary v. Moore, 2 Watts, 457; Stoddard v. Emery, 128 Pa.
436; P. & R. R. v. Beck, 125 Pa. 620.

No question of waiver of the provision in the contract requir-
ing notice of claim to be made arises in this case. The plain-
tiff presented no point upon the subject of waiver, and the
charge of the learned judge contains no allusion whatever to
any such thought. There must be more than a scintilla of evi-
dence to carry the case to the jury: Gates v. Watt, 127 Pa. 20;
Howard Ex. Co. v. Wile, 64 Pa. 201; Hays v. Paul, 51 Pa.
134; Bonnert v. Penna. Ins. Co., 129 Pa. 558; Coursin v. Ins.
Co., 46 Pa. 323; Ins. Co. v. Dougherty, 102 Pa. 568; Lebanon
Ins. Co. v. Erb, 112 Pa. 149; Susquehanna Mutual Fire Ins.
Co. v. Hallock, 22 W. N. C. 151; Thompson v. C. & A. R. R.,
22 Mo. Ap. 321.

*John B. Thayer*, for appellee.—If a carrier attempt to perform his contract in a manner different from his undertaking, he becomes an insurer for the absolute delivery of the goods, and cannot avail himself of any exception on his behalf in the contract: Dunseth v. Wade, 3 Ill. 285; Lawson on Carriers, 182; Merrick v. Webster, 3 Mich. 268; Wilcox v. Parmelee, 3 Sandf. N. Y. 610; Sleat v. Fagg, 5 B. & Ald. 342; Maghee v. Camden & Amboy R. R., 45 N. Y. 514; Bostwick v. B. & O. R. R., 45 N. Y. 712; P. & R. R. R. v. Beck, 125 Pa. 620; Goddard v. Mallory, 52 Barb. 87; Bazin v. Steamship Co., 3 Wallace, Jr., 229; Hand v. Baynes, 4 Wharton, 204; Keeney v. Grand Trunk R. R. Co., 59 Barb. 104.

Special contracts limiting liability and imposing conditions must have consideration to support them.

Upon the question of waiver the testimony shows that on the day succeeding the delivery of the horses in Philadelphia plaintiff sought defendant's agent and made a verbial claim. " I showed him my contract and told him how I came, and he says it is a mistake, I will have it rectified. I was down twice, and he said he had not heard of it yet."

A promise by a carrier to look up and adjust a claim made by a letter, is a waiver of requirement that notice should be sworn to: Hess v. Missouri Pac. R. R., 40 Mo. Ap. 202; Ins. Co. v. Haws, 20 W. N. 370; Ins. Co. v. Cochran, 88 Pa. 230; Ins. Co. v. Staats, 102 Pa. 529; Thierolf v. Universal Fire Ins. Co., 110 Pa. 37; Lycoming Ins. Co. v. Schreffler, 42 Pa. 188; Snowden v. Kittanning Ins. Co., 122 Pa. 502; Assurance Co. v. Ackerman, 2 Penny. 145; Ins. Co. v. Hocking, 115 Pa. 407.

*Thomas Hart, Jr., Francis I. Gowen* with him, in reply.—No case can be found holding that, under the circumstances of the present one, a provision in the contract expressly providing for notice of any claim under the contract, or any other like provision, is not binding upon the shipper.

Defendant is not seeking to be relieved from any risk under the contract. The evidence of waiver was insufficient.

OPINION BY MR. JUSTICE DEAN, February 20, 1893:

The plaintiff, on the 4th of April, 1890, by a through bill of lading, shipped a car load of horses, consigned to himself at

Philadelphia, from Coldwater, Michigan.  The Lake Shore &
Michigan Southern Railway Company at the point of shipment
made the contract for transportation over its line and connect-
ing roads, the Philadelphia & Reading and the Lehigh Valley,
this defendant, to destination.   The regular freight rate for the
car load of seventeen horses was one hundred and twelve dol-
lars ($112), but plaintiff by special agreement contracted with
the railroad company to have the car transported by passenger
train service ; for this, he agreed to pay in addition to the reg-
ular rate an extra charge of one hundred and fifteen dollars
and fifty cents ($115.50), making the aggregate of two hun-
dred and twenty-seven dollars and fifty cents ($227.50) ; the de-
fendant's share of the extra charge was fifty-six dollars ($56.00).
The car was moved by the Lake Shore & Michigan Company,
under the contract, to Buffalo, where it was delivered to this
defendant.   Here, owing to differences in construction between
the shipment car and the passenger cars of defendant, it was
found impossible to attach it to a passenger train, and to avoid
delay as far as practicable it was run from Buffalo to Philadel-
phia as a " special freight."   It reached its destination about
fifteen hours later than it would have done had the stipulation
as to passenger service been carried out.   Besides, the plaintiff
alleges, that owing to the rougher carriage by freight and the
delay incident thereto, his horses were seriously bruised and
injured, and in consequence thereof he sustained damage to
the amount of one thousand dollars ($1,000).

The special agreement between plaintiff and the shipping
company stipulated :

1. For transportation to destination.

2. That the carrier assumed no liability for valuation in ex-
cess of one hundred dollars ($100.00) for each horse.

3. Consignor assumed all risks in loading, feeding, watering,
and unloading.

4. No loss to be assumed by carrier because of insufficient or
defective car.

5. No claim to be made by consignor because of escape of
stock from car.

6. No claim to be made on carrier because of overcrowding,
kicking, suffocating, fright, burning of hay, straw, or other
material used for feeding or bedding.

7. That in the event of unusual delay caused by negligence of carrier, the measure of damage should not exceed the sum actually expended by consignor in purchase of food and water for the horses during the detention.

8. That no claim for damages under the contract should be allowed or paid by the carrier unless made in writing, verified by affidavit and presented to company within five days from the time horses unloaded from the car.

The mode of carriage was, by verbal contract, distinct from bill of lading.

The car arrived in Philadelphia on the 6th of April, and was unloaded the same day ; ten days after, on the 16th of April, plaintiff made a written claim, properly verified, on the defendant for four h ndred and fifteen dollars and fifty cents ($415.50), itemized thus :

| | |
|---|---:|
| Damage to horses, . . . . | $300.00 |
| Extra rate paid, . . . . . | $115.50 |
| | |
| Total, . . . . . | $415.50 |

This formal claim, so far as it was an attempt to comply with the 8th stipulation of the contract, was too late, and defendant's counsel in his prayer for instruction asked the court to so say to the jury.    This the court declined to do, and submitted the evidence to the jury to find what damages, if any, had been sustained by plaintiff by reason of defendant's deviation from contract in not carrying by passenger train service, as it had agreed to do.    There was a verdict for plaintiff in sum of five hundred dollars ($500), and defendant took this appeal from the judgment entered thereon,—assigning for error the refusal of the court to instruct that there could be no recovery by plaintiff, because he had not made a verified claim in writing within five days after unloading the horses as provided in the contract.

It is settled from all the authorities that such a provision as this, inserted in a contract by a common carrier, is reasonable and will be enforced.   It is proper, because the demand promptly made gives warning and enables the carrier, while evidence is attainable and recollection clear, to institute inquiry into the merits of the claim, and thus guard against fraud or overvaluation.

But the plaintiff replies : " If the. demand was too late, the defendant's right to insist on it depends alone on the contract ; there having been deviation from the contract in the mode of carriage, that is, from passenger train service to freight, the contract is gone and can no longer be resorted to for the purpose of ascertaining the rights and liabilities of the parties ; by the deviation the defendant subjected itself to the common law liabilities of a common carrier for hire."

It is undisputed that defendant did not carry the horses the whole distance in the mode provided and charged for in the contract ; from Buffalo to Philadelphia it carried them by freight instead of passenger train service, which is a manifest deviation ; therefore its liability is fixed by the common law ; there is no conflict in authority on this point either in this state or elsewhere.   There is still a contract by which the liability of defendant is determined, but it is one which the law implies from the relation of the parties, consignor and common carrier.   The implied contract is, that. defendant is an insurer of the horses—that is, that it agreed to carry them safely from point of shipment to destination unless prevented by " Act of God or the public enemy."   The carrier by its own act, deviation from the contract made, subjected itself to this increased and stricter liability.   All the exceptions by which it sought, in the 2d, 3d, 4th, 5th, 6th, and 7th provisions, to modify the more stringent implied contract of the common law, are gone, and its liability now is that of an insurer.

This rule had its foundation in public policy ; the reason for it, as announced in the leading case, Coggs v. Bernard, 2 Ld. Raym. 909, is, " Because it is for the safety of all persons, the necessity of whose affairs oblige them to trust to these sorts of persons, that they may be safe in their ways of dealing."

The end to be obtained is the prevention of fraud on the shipper by the carrier.   The shipper intrusts the carrier with his goods to be carried to a distant point ; care and oversight on part of the owner are gone, relinquished wholly to another, who has no interest in them except the comparatively small one of a freight charge.   To him there is temptation to fraud, and opportunity to commit it with little chance of detection ; therefore, to guard against this, the law holds him to accountability as an insurer and accepts no excuse for nondelivery,

either in quantity or value. In the course of time, the strictness of this rule has been greatly modified by notices and special contracts between carriers and shippers which, in so far as they were not unreasonable, or manifestly against public policy, have been approved by courts and sanctioned by legislation.

It will be noticed that the reason for the rule grows out of the peculiar relation between the parties from the moment of consignment to that of delivery. During the time the goods are out of the reach of the owner, in the custody of one not the owner, the custodian assumes a duty; he owes none to the owner before the consignment, nor after their delivery. While the reason for the rule would sweep away every stipulation of the contract in derogation of the duty imposed on the carrier, certainly it has no application to a provision referring to an act on part of shipper subsequent to delivery. The distinction between a stipulation going to fix the liability of the carrier, and one for his protection against fraud either before acceptance of goods or after delivery, is obvious; the law fixes the strict accountability of the carrier while he has possession of the goods to prevent him defrauding the shipper; there is no reason why, under any circumstances, it should declare abrogated antecedent or subsequent stipulations on part of carrier to prevent shippers from defrauding him.

Why then extend the rule beyond the point where the reason for it exists? We have held that such limitations as this one are reasonable, because they lessen not the legal liability of the carrier, while they tend to his protection against fraud; if in so holding under a special contract we close the door against fraud, why should we open it under the implied contract which the law enforces? The shipper here, by reason of the deviation from the contract on part of defendant, has the right to hold it to accountability as an insurer; the defendant has a right to hold the shipper, this plaintiff, to that reasonable promptness provided in the contract for presentation of his claim.

The next question is, was the right to presentation of claim within the five days after unloading waived? There was evidence from which the jury, if they believed it, might have found a waiver. If this evidence had been submitted, it would have been our duty to sustain the judgment; but no such question was raised at the trial, nor, so far as we can discover, was

there a word said on the subject, either in the general charge or answers to points.    We cannot assume that the jury passed on a fact which seems to have escaped the notice of counsel for plaintiff and the court.    While the unqualified refusal of defendant's prayer for instructions was error, there was evidence to sustain the verdict, if there was anything to show the finding was based upon it.

This opinion necessarily disposes of all the other assignments of error.    The judgment is reversed, and venire de novo awarded.