## Eckert v. Pennsylvania Railroad Company, Appellant.

211   267
f39SC³ 57
39SC³545
39SC¹547

*Railroads—Carriers—Carriers of live stock—Negligence.*

Where a railroad company takes horses for transportation beyond its own line, it assumes the duty not only of carrying the horses to the terminus of its road, but also of delivering them at that point to the connecting carrier in a car properly constructed and suitable for the purpose of transporting them to their final destination.

If the carrier transfers the horses to a car unsuitable for their safe carriage, and they are thereby injured, the carrier is liable for the loss; and the

fact that the person employed by the shippers to accompany the stock was present when the horses were transferred to the unfit car and assisted in making the change does not relieve the carrier from liability.

*Railroads—Carriers—Notice of loss—Waiver.*

A carrier may insert in its contract to transport live stock a provision requiring notice of a claim for damages within a stipulated time, but this notice being for the benefit of the carrier may be waived by it. If the carrier has actual knowledge of the loss within five days, and has not raised any question as to the want of notice until the time of trial, a year and one half after the loss, it is for the jury to say whether it has not waived the right to insist upon a formal notice.

*Railroads—Carriers—Form of action—Negligence.*

For negligence by a common carrier in transporting goods intrusted to it, the shipper may at his election bring either an action ex contractu or an action ex delicto.

A common carrier cannot by contract limit its liability for the negligence of itself or its servants.

Argued Feb. 27, 1905. Appeal, No. 235, Jan. T., 1904, by defendant, from judgment of C. P. Berks Co., Dec. T., 1902, No. 34, on verdict for plaintiffs in case of Isaac Eckert and A. B. Commings v. Pennsylvania Railroad Company. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT and ELKIN, JJ. Affirmed.

Trespass against a carrier for loss of horses. Before END-LICH, J.

At the trial the court submitted the case to the jury reserving a question of law.

The jury returned a verdict in favor of plaintiffs for $5,000.

On a rule for judgment non obstante veredicto ENDLICH, J., filed the following opinion:

1. This is an action of trespass, in which the plaintiffs declare against defendant as a common carrier, alleging that they delivered to it and it received six valuable race horses for transportation from Reading to Readville, Mass., there to be delivered to plaintiffs in good condition, the car selected for the purpose being a Burton car; that in disregard of its duty and negligently, defendant, in the course of transportation, removed the horses from said car into one unsuited for their safe carriage; and that by reason thereof the horses were injured and reached their destination in a damaged condition.

The essential part of this averment is the neglect of the defendant to perform its common-law duty of safe carriage, not the failure to carry the horses to their destination in a Burton car. In view of the allegation of negligence, the change of cars was in itself of no moment. It was the unsuitableness of the substituted car for the transportation of horses of the character and value of these, i. e., the failure to observe due care according to the circumstances, with the consequent injury to the horses, that furnished the cause of action laid. Neither the relation of the parties to each other, nor the defendant's duty resulting therefrom to exercise due care, however, sprang from the terms of the express contract. They arose from the defendant's receipt of the horses for transportation as a common carrier and its legal obligations as such in respect thereto, which could not be bargained away. It cannot, therefore, be successfully maintained that the action ought to have been in assumpsit upon the express contract. The rule is stated in 1 Chitty, Pldg, p. * 151—that " although there be an express contract, still if a common-law duty result from the facts, the party may be sued in tort for any neglect or misfeasance in the execution of the contract." And accordingly it has been settled in this state, at least as far back as Smith v. Seward, 3 Pa. 342, and Porter v. Hildebrand, 14 Pa. 129, that a common carrier is liable for his negligence in carrying goods intrusted to him in an action ex contractu or in an action ex delicto at the election of the party suing.

2. The contract comtemplating transportation to Readville, Mass., and payment being made for the whole of it, it became a part of defendant's duty to deliver the horses to the connecting carrier at Jersey City in proper shape for further transportation. It might perhaps have been claimed on behalf of plaintiffs under another form of action that the defendant by its contract had agreed that the whole of the trip should be made by the horses in the Burton car; see R. R. Co. v. Schwarzenberger, 45 Pa. 208, 215, and that in substituting another it took every risk of injury attributable to the change regardless of the question of negligence in the selection, etc., of the substituted car. But that is not the claim made, and its admissibility need not therefore be considered. The plaintiffs' case is founded on an allegation of negligence by defendant in the performance of a

duty strictly within what it assumed by its contract.   The defendant had accepted the horses for transportation in the Burton car.   As agent for the owners of that car it had received payment for the use of it over, and as carrier payment for, the entire trip to Readville, Mass.   It had encouraged the plaintiffs to expend money and to intrust to it and risk their property upon the faith of an undertaking which it entered into without having informed itself as to its ability to carry it out and which it found itself unable to carry out.   When, at Jersey City, the connecting carrier refused to accept the Burton car because of its size, defendant was not absolved from the remainder of its bargain.   Safe delivery is included in the undertaking to transport: Graff v. Bloomer, 9 Pa. 114, 115—in this case, safe delivery to the connecting carrier : R. R. Co. v. Schwarzenberger, 45 Pa. 208.   Necessarily that means delivery in good condition and in such shape as to be handled by the connecting carrier.   Defendant could neither keep the horses at Jersey City for the owner to come and take them away, nor unload them and turn them adrift.   It was bound to forward their shipment towards the final destination named in the contract, doing the best it could both in selecting a car reasonably adapted for the purpose, and the best adapted that could be had, and in seeing to it that the car selected was in suitable condition to receive and carry the horses with safety. In so doing it was bound to have regard to all the conditions of which it had notice—the season, the length of the journey accomplished and still ahead, the delay already experienced with its natural effect upon nervous animals, the character and value of the latter, and so on—in a word to use proper care according to the circumstances.   A failure of duty in any of these particulars would constitute negligence.   And if, either by a negligent selection of the car into which the horses were to be removed, or by an inadequate preparation of it for their reception, defendant exposed the animals to undue risk of injury, it is difficult to see by what method of reasoning it can be exonerated from the consequences attributable to such want of care.

3. It will not do to say that the horses being attended, under the contract, by plaintiffs' employees, their submission to a removal into the car designated by defendant was tantamount

to an approval of it by the plaintiffs. The references in the contract to such employees very clearly show that their function was well understood on all hands, being simply to look after the wants of the animals and take care of the shippers' property while being transported according to the contract. There is nothing in the latter which would invest them with any power to vary the contract or release the carrier from any duty devolving upon it under the same. So far as the contract goes, they had nothing whatever to do with the means of transportation or the method or manner in which defendant might choose to carry out its contract in respect thereto. It was their business to stay with the horses, feed them, water them, keep them in order, and do the best they could for them in whatever situation the defendant might place them. It is, of course, true that greater powers might have been given them by the plaintiffs. But of such there is no evidence in the case. It cannot be presumed that the owners of racing stock as valuable as this, who went to the trouble themselves to select and inspect the car in which the animals should travel, and who themselves made the contract with the defendant specifying that car, would delegate to employees such as these the right to annul their action and agree to the substitution of something else regardless of its fitness. The case of Squire v. R. R. Co., 98 Mass. 239, is distinguishable from the present one on a variety of grounds, one of which is that there the making of the contract itself was delegated by the shipper to his employee who attended the shipment, and who thus occupied, upon the face of the transaction, a very different position from that of plaintiffs' employees in this case.

4. Whether, in truth, the defendant's choice of another car was a negligent one under the circumstances, and whether the injuries sustained by the horses were due to its defective condition, the slipperiness of the floor, etc., taken together with its peculiar construction, were under the testimony controverted questions of fact, determinable only by the jury. The defendant was not, of course, responsible for injuries resulting wholly from rough handling by the connecting road. But if the defective condition of the car contributed to the injurious effects of such handling and aided in bringing about the injuries, the defendant was responsible on the familiar principle

that where an injury is produced through the negligence of a third party concurring with that of defendant, the latter is nevertheless liable: Cooley, Torts, p. 684; Patterson, Ry. Accid. Law, p. 413; Lockhart v. Lichtenthaler, 46 Pa. 151; Bunting v. Hogsett, 139 Pa. 363.

5. The requirement in the contract of notice of injury and claim of damages to be given under affidavit to a designated office of the defendant company at Philadelphia within five days from the date of the removal of the stock from the car, was one which the defendant might waive, its purpose being protection to the carrier: Pavitt v. R. R. Co., 153 Pa. 302, 307, 309. There are indeed, authorities under which what took place in this case on the arrival of the horses at Readville between one of the plaintiffs and the agent of the connecting road might be held to dispense with the notice and claim of damages: Ry. Co. v. Koch, 47 Kans. 753 (28 Pac. Repr. 1013). But it is not necessary to invoke the principle of those decisions, that the agent of the connecting carrier at the place of delivery is, in cases of through consignments, to be treated as the agent of the receiving carrier for the purpose of affecting it with notice of the condition of things at the time of arrival, etc. It has been so often decided, that a reference to the recent cases of Weiss v. Ins. Co., 148 Pa. 349, and Roe v. Ins. Co., 149 Pa. 94, is more than sufficient, that where an insurer receives without objection notice of loss not complying with the exact requirements of the contract either in form or in point of time, and refuses payment on grounds not involving the technical insufficiency of such notice, he is precluded thereafter from defending on that ground, being deemed to have waived it. Inasmuch as the relation of a common carrier to the shipper is practically that of an insurer, generally at common law, restrictedly under a limited contract, the same rule applies as regards similar requirements of notice, etc., in actions by the shipper against the carrier under such contract for loss or injury of goods shipped: Merrill v. Express Co., 62 N. H. 514; and see R. R. Co. v. Brown (Ill.), 39 N. E. Repr. 273; Hudson v. R. R. Co. (Ia.), 60 N. W. Repr. 608; Rice v. Ry. Co., 63 Mo. 314. The application of this principle to the undisputed facts in this case is too obvious to call for discussion.

6. The contention that the contract limiting the liability of

defendant for injury, through negligence or other causes, to $100 for each horse, the jury ought to have been told that that was the maximum of any possible recovery in the case, is answered by the principle, firmly established in this state, that there can be no valid limitation upon the liability of a common carrier for the results of its negligence : R. R. Co. v. Schwarzenberger, 45 Pa. 208, 215 ; Farnham v. R. R. Co., 55 Pa. 53, 58 ; R. R. Co. v. Raiordon, 119 Pa. 577 ; Willock v. R. R. Co., 166 Pa. 184 ; Ruppel v. Ry. Co., 167 Pa. 166 ; Allam v. R. R. Co., 183 Pa. 174 ; Crary v. R. R. Co., 203 Pa. 525, 528. The allegation here was negligence in defendant and injury resulting therefrom. That was the question submitted to the jury. Its verdict must be understood to declare negligence. Hence the limitation in the contract upon the amount recoverable was out of the case. And for this reason, if for no other, it would have been error to instruct the jury, as requested by defendant, that plaintiffs were bound by the terms of the contract.

What has been said seems to cover all the points raised by the learned counsel for defendant in support of the rules for a new trial and for judgment non obstante veredicto. If the conclusions reached are correct, there is no room for sustaining either.

The rules to show cause are discharged.

*Error assigned* was in entering judgment on the verdict.

*Cyrus G. Derr*, for appellant.—The contract of the appellant company being that it would transport the plaintiffs' horses in Burton Stock Car Company's car, No. 812 to the place where they were to be received by the connecting carrier, the transportation by the appellant company of the car and horses to the floats of the New York, New Haven and Hartford Railroad Company at Jersey City, where they were received by the latter company and transferred to its railroad at Oak Point, was a complete performance of its contract by the appellant company.

If the appellant company is to be treated as securing the car under its contract and pursuant to the terms thereof, then Maley, the appellees' agent in charge of the horses, must be

taken to have been invested with the appellees' right and duty to inspect the car, and he, Maley, having inspected the car and having himself helped to clean it and to put the horses and other paraphernalia of the appellees into it, the car must be regarded as having been fit, or Maley must be regarded as negligent in having allowed the horses in his charge to be put into an unfit car, and this negligence of the agent being imputable to the appellees, there can be no recovery for the resulting injury: Harris v. R. R. Co., 20 N. Y. 232; Squire v. N. Y. Central R. R. Co., 98 Mass. 239.

The appellees not having delivered to the appellant company's live stock agent at his office in Philadelphia a claim for the injuries to the horses in question in writing and verified by affidavit in accordance with the terms of the contract, an action for the said injuries cannot be sustained: Pavitt v. Lehigh Valley R. R. Co., 153 Pa. 302.

*Jefferson Snyder* of *Snyder & Zieber*, for appellees.

OPINION BY MR. JUSTICE MESTREZAT, March, 20, 1905:

It was the duty of the defendant company not only to carry the plaintiffs' horses to the terminus of its road at Jersey City, but also to deliver them at that point to the connecting carrier in a car properly constructed and suitable for the purpose of transporting them to their final destination. The failure to perform this duty is the basis of this action. The plaintiffs allege, and the jury has found, that the defendant company removed the horses from the Burton car at Jersey City and placed them in a car not arranged and fitted but utterly unsuitable for the safe carriage of the horses. This was a clear violation of the carrier's common law duty, and the jury having found that this act of the defendant company resulted in the injury to the horses, the company's liability necessarily followed. The fact that the person employed by the shippers to accompany the stock was present when the horses were transferred to an unfit car and assisted in making the change, did not relieve the company from the duty to furnish a suitable car. This person's duty, as provided in the contract, required him to load and to unload the stock, to feed, water and care for it while in transit. He had no authority to select or furnish the car to which the

stock was to be transferred at Jersey City. That was the duty of the carrier. The shippers had complied with their contract " to inspect the body of the car or cars in which said stock is to be transported, and to satisfy himself that they are sufficient and safe, and in proper order and condition " when they selected and had the defendant company procure for them the Burton car in which they loaded the stock at Reading, and which admittedly was a safe and suitable car for carrying their horses. The company received the stock from the shippers in this car to be transported to its destination at Readville, a suburb of the city of Boston, Mass. If subsequently the car en route became unsuitable for the purpose of shipping the horses, or for any other reason it had to be abandoned and the horses had to be transferred to another car, the selection and furnishing of a car suitable for transporting the stock to its destination devolved upon the carrier, and the failure to perform it would convict the company of negligence.

The defendant is not, under the facts of this case, in a position to insist upon the failure of the plaintiffs to deliver to it a verified written claim of their loss within five days from the time the horses were removed from the car at their destination. The horses were shipped from Reading, Pa., on Wednesday, June 11, 1902, and arrived at the freight station of the connecting carrier at Readville, their destination, about seven-thirty o'clock on Saturday evening, June 14. They were in bad condition, and Mr. Cummings, one of the plaintiffs, refused to receive them until he was directed by the railroad agent at that point to remove them from the car and to hand in his bill for damages. Cummings immediately wired Eckert, joint owner of the stock, at Reading, the condition of the horses. On the following Monday, as Mr. Eckert testifies, he communicated with Mr. Fraim, the defendant company's freight agent at Reading, who had acted for the company in shipping the horses, " and told him that our horses had met with an accident and we would hold the company responsible." Fraim replied that " he would report it to the proper authorities and let me know." On Wednesday, June 18, Mr. Fraim wrote the defendant's claim agent at Philadelphia, advising him of the change of cars, of the detention of the stock at Jersey City, of the injured condition of the horses, and that the plain-

tiffs would doubtless claim damages. Accompanying and at-
tached to this letter was a statement of the billing showing
date of shipment, the number of horses shipped, and their
destination. This letter was turned over to Mr. Baer, the de-
fendant's live stock agent at Philadelphia, on June 20. Under
this date, Mr. Eckert, who was at Reading, also wrote Mr.
Fraim, advising him fully as to the facts of the shipment, the
transfer of the stock to an unfit car, its detention and bad
treatment at Jersey City, and its condition on arriving at
Readville, and inquiring whether the company was willing to
take up the question of damages, stating the value of the
horses to be about $10,000. Mr. Fraim, in forwarding this
letter on the same date to the company's claim agent at Phila-
delphia, said : " Please see my letter to you dated June 18,
regarding this shipment explaining about the same as Mr.
Eckert has done in his letter attached." On July 14, Mr.
Baer wrote Mr. Eckert in reply to his letter to Mr. Fraim
that " I cannot see that any damage would occur " by reason
of the transfer of the horses to another car at Jersey City. It
was not until the trial of the cause in November, 1903, nearly
one year and a half after the plaintiff's stock had been injured,
that the company gave any intimation that it would resist the
plaintiffs' demand for damages because a verified written claim
of loss had not been delivered within five days from the time
the horses were removed from the car at their destination.

It is true, as we have held, that a carrier may insert in
its contract to transport live stock, a provision requiring no-
tice of a claim for damages within a stipulated time, and
such a provision is reasonable and will be enforced. But,
as said in Pavitt v. Lehigh Valley R. R. Co., 153 Pa. 302 :
" It (the provision for notice of claim) is proper, because
the demand promptly made gives warning and enables the
carrier, while evidence is attainable and recollection is clear,
to institute inquiry into the merits of the claim, and thus
guard against fraud and overvaluation." The purpose of the
provision, therefore, and the reason for its enforcement by the
court, is to enable the carrier to make a prompt investigation
of the merits of the claim and thereby protect itself against
imposition by the shipper. Being for the protection of the
carrier, the latter may waive its right to enforce the provision.

Pavitt v. Lehigh Valley R. R. Co., 153 Pa. 302 ; Hudson v. Northern Pacific R. R. Co. (Iowa), 54 Am. St. Rep. 550; Hinkle v. Southern Railway Co. (N. C.), 78 Am. St. Rep. 685. Here, as disclosed by the correspondence between the parties, the defendant company's agents were in possession of all the facts relative to the loss and the cause of it within five days of the delivery of the stock.   This fact and the subsequent conduct of the defendant company were sufficient to go to the jury on the question of its waiver of the right to insist upon a formal written claim of the plaintiffs' loss ; and hence, the court could not, as requested by the defendant, direct a verdict for the company on the ground that there had been no delivery of such a claim.

It is settled, as the authorities cited by the trial judge show, that for negligence by a common carrier in transporting goods intrusted to it, the shipper may, at his election, bring either an action ex contractu or an action ex delicto.   It is also unquestionably the law of this state, as declared in numerous decisions of this court, that a common carrier cannot by contract limit its liability for the negligence of itself or its servants.

The able and exhaustive opinion of the learned trial judge, overruling the defendant's motion for judgment non obstante veredicto and for a new trial, in which he considers all the questions raised on this appeal, renders any further consideration of the assignments of error unnecessary.

The judgment is affirmed.