OWENS BROTHERS, Appellants, v. CHICAGO, ROCK ISLAND and PACIFIC RAILWAY COMPANY, Appellee.

**Carriers:** INJURY TO STOCK: RECOVERY OF DAMAGES. Although a shipper of stock has accepted a written contract of shipment, he may waive his rights thereunder and bring his action in tort for damages.

**Same:** TORT ACTION. The allegation of a contract of shipment does not necessarily characterize the action as one upon the contract rather than in tort; for while the tort complained of is a breach of duty imposed by law, the relation of the parties which gives rise to such duty is a creature of contract and ordinarily must be adduced as preliminary to proof of the tort.

**Same:** PLEADING. A petition alleging the undertaking to transport live stock, their exposure to injury while in transit, and negligence with respect thereto, is sufficient to authorize a submission of the claim for a recovery in tort.

**Same:** NEGLIGENCE: ACT OF GOD: SUBMISSION OF ISSUES. Where there is a substantial conflict in the evidence as to whether delay in the shipment of live stock was the result of negligence or an act of God, the issue should be submitted.

*Appeal from Iowa District Court.*—HON O. A. BYINGTON, JUDGE.

MONDAY, OCTOBER 5, 1908.

ACTION to recover damages on account of delay in the shipment of live stock. At the close of the evidence the court instructed the jury that plaintiffs were not entitled to recover except for the value of one animal alleged to have been injured, and verdict was returned accordingly. From the judgment rendered on said verdict, plaintiffs appeal. — *Reversed.*

*J. M. Dower* and *Popham & Havner,* for appellants.

*Carroll Wright, J. L. Parrish,* and *C. Hedges,* for appellee.

WEAVER, J.— Plaintiffs are dealers in thoroughbred cattle at Homestead, Iowa, and the defendant is a railway company doing business as a common carrier upon a line of road passing through Homestead to and beyond Newton, Iowa. The plaintiffs allege that a fine stock sale had been advertised to be held at Newton at which they proposed to offer their herd, and, for the purpose of obtaining transportation therefor, they entered into oral negotiation with the defendant, through its agent at Homestead, informing him of their desire to ship said cattle, the purpose of such shipment, and

the necessity of its being forwarded promptly and without undue delay, and that, as a result of such negotiation, the defendant, for a specified consideration, orally undertook to carry from Homestead to Newton five car loads of said cattle, and that said shipment should be hauled in a fast train known as " First 97," which would leave Homestead about eleven o'clock a. m. of January 3, 1906, and arrive at Newton about 3 o'clock of the afternoon of the same day. But plaintiffs aver that, although said stock was loaded and ready in time for said train, defendant neglected and refused to transport them on " First 97," but held said loaded cars for a long time at Homestead until the arrival of " Second 97," by which it attempted to haul them to Newton, and, instead of delivering said shipment at said destination within four or five hours, as it should have done, such delivery was not made for a period of about thirty hours, and that by reason of such delay and consequent exposure of said cattle to the weather, and by depriving them of water and feed, they were seriously injured and depreciated in value.

In a second count the petition further charges that one of the animals constituting such shipment was injured by reason of a defect in the car in which it was shipped, and became a total loss to the plaintiffs, and recovery is asked on account thereof. By an amendment to the petition, the defendant is also charged with negligence in transporting and caring for said cattle by reason of which they sustained injury in the sum of $1,800. The answer of the defendant denies the plaintiffs' claim, and sets up a counterclaim for an alleged balance of unpaid freight charges.

The plaintiffs' evidence tended to show the substantial truth of the averments of the petition as to the agreement to ship the cattle on the train " First 97," which was due to leave Homestead about eleven o'clock in the forenoon of January 3, 1906. The agent was informed of the purpose for which the shipment was to be made, and the necessity of its prompt and quick transportation in order that the cattle

should be in fit condition for the sale at which they were to be offered.   The agent professed to communicate with the defendant's managing officers, and informed plaintiffs that the cars would be furnished, and that, if loaded in time, they would be hauled to Newton by the fast freight, known as "First 97."   The cars were, in fact, furnished, and the cattle loaded therein before the arrival of said train, but, for reasons not then explained, the trainmen refused, or at least failed, to take up the cars, and they were left standing on a side track until another train, known as "Second 97," arrived and took them on about midnight, or later of that day. By that time it was snowing briskly.   The train was delayed, stopping at different points, and did not reach Newton until some time in the afternoon of January 4, 1906. There was evidence, also, from which the jury might find that by reason of the delay on the road, the cold and storm to which the stock was exposed, and their deprivation of food and drink they were damaged in condition, appearance, and market value in a very substantial amount.   It was also shown that a door on one of the cars was in a damaged and defective condition, and that, by reason thereof, one of the animals in some manner thrust a leg through an opening in or under the door, receiving injuries necessitating its subsequent destruction.

On part of the defendant the evidence was to the effect that the snowstorm had set in before the train "First 97" reached Homestead; that this train found some trouble on account of impeded track, but reached Grinnell, where by reason of the storm it was set out on a side track, remaining there until the next day and until after "Second 97" had passed through with plaintiffs' stock.   While there is testimony that the train had a load near to the hauling capacity of its engine when it reached Homestead, none of it was live stock, but consisted of paper, iron, machinery, automobiles, oil, beer, and general merchandise.   Train "Second 97," according to defendant's showing, after taking on plaintiffs'

shipment at Homestead, proceeded without very serious difficulty to Brooklyn. At that point, although it was not the end of the division the engineer and fireman refused to go further. The storm was then passed, though the wind was still blowing. The trainmen had been on duty nearly eighteen hours, and, as they refused to proceed further, the train was put away. On the afternoon of January 4th the conductor of " Second 97 " took the engine and caboose of that train, and, proceeding to Grinnell, hauled " First 97 " to the end of the division at Valley Junction. Meanwhile an engine sent from the west for that purpose took up the cars in question at about nine o'clock in the morning of January 4th, and hauled them to Newton, arriving there at about one o'clock in the afternoon. In short, as to this feature of the defense, it is the contention of the defendant that whatever delay occurred in shipping the cattle was due alone to the act of God, and that no liability exists on its part on account thereof.

It was developed on cross-examination of the plaintiffs that after the stock had been loaded into the cars, and were ready for carriage to their destination, the defendant's agent at Homestead made and delivered to the plaintiffs and their helpers separate bills of lading for the several cars, embodying what is called a " live stock contract," signed by the agent and by the person to whom the bill of lading was made. · It was thereupon insisted by the defendant that, such bills of lading having been issued to them, the plaintiffs' right of action, if any they have, is upon such instruments, and that the claim for damages independent of the writing cannot be sustained. The trial court adopted this view of the law, and, on motion of the defendant withdrew the plaintiffs' claim from the jury, except for the value of the animal injured in the defective car door to which extent counsel for the defendant conceded the liability of their client.

I.   Assuming, as for the purposes of this case we must, that the evidence tended to show an injury to plaintiffs' cat-

tle in transit, the controlling question presented by the appeal is whether the right of action therefor

**1. CARRIERS: injury to stock: recovery of damages.** is exclusively upon the written contract, or whether plaintiffs may waive or ignore the contract, and sue in tort upon the defendant's liability as a common carrier. That they may waive their right to sue upon the contract and bring an action in tort for damages, if any they have sustained, is a rule of law well established by an almost unbroken line of authorities. *Bretherton v. Wood,* 3 B. & B. 54; *Cowan v. Telegraph Co.,* 122 Iowa, 385; *Burkle v. Ells,* 4 How. Prac. (N. Y.) 288; *Brown v. Railroad,* 54 Wis. 342 (11 N. W. 356, 911, 41 Am. Rep. 41); *Spence v. Railroad,* 92 Va. 102 (22 S. E. 815, 29 L. R. A. 578); *Mershon v. Hobensack,* 22 N. J. Law, 372; *Central v. Railroad* (D. C.), 70 Fed. 764; *Smith v. Seward,* 3 Pa. 342; *Railroad v. Kemp,* 61 Md. 619 (48 Am. Rep. 134); 3 Enc. Pl. & Pr. 818; *Clark v. Richards,* 1 Conn. 59; *Eckhart v. Railroad Co.,* 211 Pa. 267 (60 Atl. 781, 107 Am. St. Rep. 571).

Nor does the fact that the plaintiff in such an action alleges the making of a contract of shipment with the defendant necessarily have the effect to characterize the action

**2. SAME: tort action.** as one upon contract rather than in tort; for, while the tort complained of is a breach of the duty imposed by law, the relation between the parties which gives rise to such duty is a creature of contract, express or implied, and ordinarily proof of the contractual relation must be adduced as a necessary preliminary to showing the alleged tort. Says Judge Cooley in his work on Torts (3d Ed.) 56: " Indeed, in many cases an action as for tort or an action as for breach of contract may be brought by the same party upon the same state of facts," and of this rule he cites the case of the common carrier as a " conspicuous illustration." See, also, *Railroad v. Stock,* 104 Va. 97 (51 S. E. 161); *Nelson v. Railroad,* 28 Mont. 297 (72 Pac. 642); *Dungan v. Read,* 167 Pa. 393 (31 Atl. 639). And where the

language of the petition is equivocal, and there is doubt whether the pleader intended to claim for tort rather than for breach of contract, the doubt will be resolved by construing it an action in tort. *Railroad v. Portrait Co.,* 122 Ga. 11 (9 S. E. 727, 106 Am. St. Rep. 87); *Railroad v. Hurst,* 36 Miss. 660 (74 Am. Dec. 785); *Railroad v. Kemp,* 61 Md. 619 (48 Am. Rep. 134). This rule, of course, will not be extended to prevent the defendant in an action of tort from pleading by way of defense any contract with the plaintiff which, if valid, has the effect to waive the performance of the duty for a breach of which damages are demanded. *Railroad Co. v. Pace,* 69 Ark. 256 (63 S. W. 62), and cases there cited.

The plaintiffs' petition, as amended, charges, not only the undertaking of the defendant to carry the cattle and their exposure to injury while in transit, but charges the defendant with negligence in respect thereto. This, we think, constitutes a sufficient statement for a claim for recovery in tort, and plaintiffs were entitled to go to the jury thereon. Directly in point see *Railroad Co. v. Wilson,* 85 Ark. 257 (107 S. W. 978); *Railroad Co. v. Pace,* 69 Ark. 256 (63 S. W. 62); *Railroad Co. v. Heath,* 41 Ark. 478. " The liability of a common carrier is not created by the special contract. The law creates the liability and merely permits the party to except from it certain causes of loss. *Prima facie* the carrier is liable on proof of delivery, and acceptance for carriage and of loss or damage in carrying. If there be any contract varying his liability, he must show it and that the loss came within the exception made by it. It is not for the owner to show there was no such contract." *Hull v. Railroad Co.,* 41 Minn. 510 (43 N. W. 391, 5 L. R. A. 587, 16 Am. St. Rep. 722).

3. SAME: pleading.

II. There is nothing in the record to justify the trial court in holding as a matter of law that the alleged delay in the shipment and the resulting injury to the cattle was the act of God. While there was evidence tending to show such fact, there was evi-

4. SAME: negligence: act of God: submission of issues.

dence tending to rebut the conclusion which the defendant sought to derive therefrom. Its weight and sufficiency were for the jury. The court, therefore, erred in sustaining the defendant's motion to withdraw the plaintiff's claim from the jury.

The judgment appealed from is therefore *reversed*.