# Nemcof *v.* Baltimore & Ohio Railroad Company, Appellant.

*Carriers—Common carriers—Loss of goods—Evidence—Case for jury.*

1. In an action against a common carrier to recover for the loss of a parcel of goods, the case is for the jury, where the consignee, the single witness for the plaintiff, testifies that the parcel was not delivered to him, and that he gave the notice of nonarrival within thirty days as required by the bill of lading, and the defendant offers no testimony to contradict these averments.

2. Where one of several carriers is sued for nondelivery of goods, he cannot relieve himself from liability without showing that he had safely delivered the goods to another suitable and proper carrier for transportation to destination. The burden is upon him to show that the goods were not lost while in his possession.

Argued Oct. 21, 1908. Appeal, No. 124, Oct. T., 1908, by defendant, from judgment of C. P. No. 1, Phila. Co., Dec. T., 1906, No. 2,631, on verdict for plaintiff in case of Charles Nemcof v. The Baltimore & Ohio Railroad Company. Before RICE, P. J., PORTER, HENDERSON MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Assumpsit to recover for the nondelivery of goods. Before KINSEY, J.

The facts appear by the opinion of the Superior Court.

Verdict and judgment for plaintiff for $458.50. Defendant appealed.

*Errors assigned* were (1, 2) refusal of binding instructions for defendant, and (3) ruling on evidence, quoted in the opinion of the Superior Court.

*W. B. Linn,* with him *G. H. Stein,* for appellant.

*Samuel J. Gottesfeld,* for appellee.

OPINION BY HEAD, J., July 14, 1909:

The evidence in this case, which is brief and practically un-

disputed, is sufficient, we think, to have warranted the jury in finding the following facts: The plaintiff is a wholesale merchant, doing business in the city of Philadelphia. On or about November 4, 1905, he delivered to the defendant railroad company, two separate packages to be transported and delivered to Hooke & Co., of Cincinnati. A single receipt or bill of lading was given by the company for both packages, they being therein described as "one case and bale of woolens." That in due course "the one case" arrived at destination, and was delivered to the consignees; that the remaining package, one "bale of woolens," was never received by the consignees, and that the value of it at the time of its delivery to the defendant was $458.50, the amount of the verdict. That the western terminus of the lines of the defendant company is Parkersburg, West Virginia, and from that point to Cincinnati, the transportation would have to be over another line. That the bill of lading, after describing the goods, contained the following provisions: "which said Company agrees to carry to said destination, if on its road. Otherwise, to deliver to another carrier on the route to said destination. Claims for loss or damage must be made in writing to the agent at point of delivery promptly after arrival of the property, and if delayed for more than thirty days after the delivery of the property, or after due time for the delivery thereof, no carrier hereafter shall be liable in any event." That the plaintiff, being advised by the consignees of the nonarrival of the bale of woolens, went to the office or pier of the defendant company where the goods had been shipped, and there gave notice in writing that they had not arrived at destination. The consignees had been in business in Cincinnati for some time, and had been accustomed to receive shipments of goods from the plaintiff, and other merchants in the east, which were transported by the defendant company. That shortly after the arrival of the one package, they went to the railroad office in the city of Cincinnati, where they were accustomed to receive goods transported from the east over the defendant company's lines, and there gave written notice that the bale of woolens had not arrived. The learned court below instructed the jury that, if they believed the evidence which

tended to establish these facts, the plaintiff had made out a case and would be entitled to recover. The court at the same time refused the point presented by defendant's counsel praying for binding instructions, as also a motion for judgment non obstante veredicto afterwards filed, and directed judgment to be entered on the verdict.

The learned counsel for the appellant contends, first, there was not sufficient evidence to submit to the jury that the bale of woolen goods had not reached its destination and been delivered to the consignees. To this we cannot assent. It is true the testimony on this subject came but from a single witness, one of the consignees. His testimony shows that he was not skilled in the use of the English language. Whilst on the witness stand he was asked the following question: "Q. Tell us whether or not there was delivered to you, Mr. Weidner, a bale of goods shipped by Mr. Nemcof over the Baltimore & Ohio Railroad at the same time he shipped a case of goods? A. We got the case of goods, but the bale was missing." There was no cross-examination on this branch of the case, and no contradictory evidence whatever offered by the defendant. We feel obliged to conclude that, under these circumstances, it fairly became a question of fact for the jury to determine whether or not the bale of woolen goods was ever delivered, and the court could not have properly withdrawn the case from their consideration.

The appellant next contends that there was not sufficient evidence to submit to the jury that the written notice of the loss of the goods, provided for in the bill of lading, was given to the agent at the point of delivery within thirty days after the due time for the delivery of the package. Again, we think the evidence, when examined, will not support this claim. The witness Weidner testifies, "Mr. Hooke [his partner] went with me to the railroad to give notice. First he told me at the store that the bale was missing and that we would go to the B. & O. for the bale. . . . Q. Where? A. Fourth and Central avenue, Cincinnati. Q. Approximately, when was it? A. A couple of days after we got the goods. Q. What kind of notice did you give them? A. It was written. Q. Did you go to the Baltimore &

Ohio Southwestern Railroad Company that day with Mr. Hooke? A. I went to the Baltimore & Ohio. I don't know anything about the Southwestern, but I know it was the Baltimore & Ohio. . . . I was sure it was the Baltimore & Ohio, because I was usually getting my goods from Mr. Nemcof, or anybody else from New York, from the same people." Part of the above quoted testimony was given in chief, and part on cross-examination. Taking it altogether, we think it amounts to much more than a scintilla, and was sufficient to carry the case to the jury. No complaint was ever made by the railroad company, before the time of trial, of the insufficiency in any respect of the notice so given, nor was a single witness offered on the part of the defendant to deny that notice had been promptly given, both at the point of shipment and at the point of destination, of the nonarrival of the bale of woolen goods.

In Eckert v. Pennsylvania Railroad Co., 211 Pa. 267, Mr. Justice MESTREZAT, speaking of such a provision in a bill of lading, says: "The purpose of the provision, therefore, and the reason for its enforcement by the court, is to enable the carrier to make a prompt investigation of the merits of the claim and thereby protect itself against imposition by the shipper. Being for the protection of the carrier, the latter may waive its right to enforce the provision. Here, as disclosed by the correspondence between the parties, the defendant company's agents were in possession of all the facts relative to the loss and the cause of it within five days of the delivery of the stock. This fact and the subsequent conduct of the defendant company were sufficient to go to the jury on the question of its waiver of the right to insist upon a formal written claim of the plaintiffs' loss; and hence, the court could not, as requested by the defendant, direct a verdict for the company on the ground that there had been no delivery of such a claim."

The conduct of the company referred to in the language above quoted consisted in the fact that "it was not until the trial of the cause in November, 1903, nearly one year and a half after the plaintiff's stock had been injured, that the company gave any intimation that it would resist the plaintiff's demand for damages because a verified written claim of loss had not been de-

livered within five days from the time the horses were removed from the car at their destination." In the face of the undisputed evidence that notice of the nonarrival of the bale had been promptly given at each end of the line, and the subsequent conduct of the company, it might not be too much to say, under the authority cited, that the case should have gone to the jury on the question whether the company had not waived its right to insist on the notice provided for in the bill of lading, but on this question we need not give any opinion because we think it reasonably clear, from the testimony we have quoted, that the jury could fairly find that the consignees had given, within the time prescribed, the notice required in the written or printed contract of carriage.

Finally, the appellant complains that the learned trial court rejected the offer of the defendant to prove by its single witness as follows: "I propose to prove that the destination of the goods specified in this bill of lading, to wit: Cincinnati, is not on the line of the defendant company; that it is on the line of another railroad company known as the Baltimore & Ohio Southwestern Railway Co.; that the junction for Cincinnati deliveries of the two lines is Parkersburg, West Virginia." Even if the facts stated in the offer be all admitted, they in no wise relieve the defendant from its liability, because they do not tend to prove, nor is there any offer to follow them by proof, that the defendant company carried the goods safely to its own terminal, Parkersburg, and there delivered them to the other carrier for transportation to the point of destination. Besides, it was already in evidence, from the mouth of the same witness, that Parkersburg, West Virginia, was the western terminus of its line. The court was not obliged to permit the witness to duplicate his testimony as to that fact, and the offer contained no other except the name of the connecting line between that terminus and Cincinnati. This was of no importance unless accompanied with or followed by an offer to prove that the defendant had carried the goods to Parkersburg and there delivered them to the other line. Upon this vital point the defendant was entirely silent. As to the obligation of the defendant company under its contract of carriage, there cannot be any

doubt.  In Eckert v. Railroad Company, 211 Pa. 267, the court declared: "It was the duty of the defendant company not only to carry the plaintiff's horses to the terminus of its road at Jersey City, but also to deliver them at that point to the connecting carrier in a car properly constructed and suitable for the purpose of transporting them to their final destination."  In American Express Company v. Second National Bank, 69 Pa. 394, the court declares: "If property is received by a common carrier, and he fails to deliver it safely at its place of destination, the burden is on him to prove that it was not lost or injured while in his custody."

The plaintiff then having shown the shipment of the goods, their nondelivery at destination, and notice of the loss in the manner required by the bill of lading, the burden was on the defendant to show that it had discharged its contract of carriage, and as already stated, to do this the burden was upon it to prove, first, that it had safely transported the goods over its own lines as far as their proper routing would carry them, and then that it had safely delivered them to another suitable and proper carrier for transportation to destination.  As there was a total failure of proof in either of these respects by the defendant, it seems to us that the plaintiff exhibited a meritorious case, and that the verdict is fairly supported by the evidence adduced at the trial.  The assignments of error must, therefore, be overruled.

Judgment affirmed.