THE WICHITA & WESTERN RAILWAY COMPANY V. GUSTAVE KOCH.

1. CARRIERS—*Live-Stock Shipments—Connecting Lines.* Where a railroad company contracts to carry stock beyond it own terminus, and there is a stipulation in the contract, which is a condition precedent to a right to recover for loss or injury, that the shipper must give written notice of his claim to an officer of the company, or its nearest station agent, before the stock is removed from the place of destination or delivery or is mingled with other stock, the officers and agents of the connecting company used and adopted by the contracting company should, for the purposes of the contract, be treated as the officers and agents of the latter company, and notice given to the agent of the connecting company at the place of destination will be sufficient.

2. NOTICE, *Not Given as Contract Required.* In the present case notice was not given to the carrier until 12 days after the delivery and removal of the stock; and under the evidence it is *held*, that notice was not given as the contract required, or within reasonable time.

*Error from Sedgwick District Court.*

ACTION by *Koch* against the *Railway Company*, to recover for the injury to and loss of certain hogs. Judgment for plaintiff, June 8, 1889. The defendant brings error. The opinion states the facts.

*Geo. R. Peck, A. A. Hurd,* and *Robert Dunlap,* for plaintiff in error.

*Sankey & Campbell,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: This action was brought by Gustave Koch against the Wichita & Western Railway Company to recover damages for the injury and loss of certain hogs, which the railway company undertook to carry from Cheney to Kansas City. It was alleged that a car-load of hogs was shipped on January 7, 1886, and that through the negligence of the company 18 of the hogs died, two of which were left at Wichita, and were a total loss, and that 16 of the dead hogs were de-

48 — 47 KAS.

livered in Kansas City, but were of but little value; and that by reason of the death of the hogs Koch was damaged in the sum of $125. It was further alleged, that through the negligence of the company the hogs were greatly delayed in transportion, and were negligently handled, so that many of them were so frozen and injured as to depreciate them in value, in consequence of which there was a loss of $100. It was further alleged, that by the delay of the company in transporting the hogs there was a decline in the market price of the same, to the damage of the shipper of $25. A further claim of damages was made upon a shipment of stock in 1887; but there was no competent testimony given upon this claim, neither was there any allowance made by the jury for the same in their verdict, and it may be laid out of consideration. The jury returned a verdict in favor of Koch for $201.65, and the special questions submitted and answered show that $175.15 of that sum was allowed for the hogs frozen to death, and $26.50 of it for the shrinkage of the remainder from cold and suffering on the route. The testimony tended to show that the hogs were loaded and started to Kansas City on January 6, and that soon afterward it became very cold and began to snow, so as to blockade the railroad and delay the train on which the hogs were being carried. The storm and cold increased in severity, and continued for several days. After considerable effort the hogs were delivered to the agents of Koch at Kansas City on January 13. They were then in bad condition; 16 of them were dead, two had been left on the way, and others were badly frozen and injured. They were sold and delivered to the packers in Kansas City on the day of their arrival. The shipping contract made between Koch and the railway company provided, among other things—

"That, as a condition precedent to his right to recover any damages for loss or injury to said hogs, he will give notice in writing of his claim therefor to some officer of said party of the first part, or its nearest station agent, before said stock is removed from the place of destination above mentioned, or from the place of delivery of the same to said party of the second part, and before such stock is mingled with other stock."

Upon this stipulation the court instructed the jury as follows:

"Before you can find for the plaintiff, he must show by the greater weight of the evidence that the plaintiff notified the defendant in writing of the loss or injury to said stock before said stock was moved from the yards, or from the place of delivery, or before such stock was mingled with other stock."

No notice was given before the sale and delivery of the stock to the packers at Kansas City, nor was there any notice given until January 25, 12 days after the hogs had been disposed of. The instruction given by the court with reference to the giving of a notice must be taken as the law of the case. Not only that, but it has been held that such a stipulation or contract is reasonable, just, and valid. (*Goggin v. Railway Co.*, 12 Kas. 416; *Sprague v. Railway Co.*, 34 id. 347.) The record shows that the plaintiff below wholly failed to bring himself within the requirements of the instruction of the district court by showing a compliance with this provision. It is not contended that there was any unfairness, misrepresentation or fraud in the making of the contract, but it is contended that compliance with the same was unreasonable and impracticable.

The contract was made with the Wichita & Western Railway Company, the eastern terminus of whose line is at Wichita, and the stock was forwarded over the Atchison, Topeka & Santa Fé railroad from Wichita to Kansas City. They appear to be, or at least at that time were, separate corporations. It is urged that the giving of a notice to the agent of the Wichita & Western Railway Company at Wichita of loss and injury discovered at Kansas City would be wholly impracticable. It is said that, unless the stock which is shipped there for sale is speedily disposed of, great expense and loss must ensue, and that therefore to wait until a notice was given to the officers or agents of the Wichita & Western Railway Company is so unreasonable a provision as to defeat its validity. The agreement of the contracting company was to carry the stock, not to Wichita, but to Kansas City. According to the contract, it became the carrier for the whole dis-

tance; and, in effect, it adopted the line of the connecting company as its own, and to that extent it made the officers and agents of that company its own officers and agents. The station agent, therefore, of the Atchison, Topeka & Santa Fé Railroad Company at Kansas City must, for the purposes of this contract, be deemed the agent of the Wichita & Western Railway Company; and a service of a written notice upon that agent would have been a sufficient compliance with the stipulation in question. (*Railroad Co. v. Roach*, 35 Kas. 743; *Railroad Co. v. Fort*, 9 Am. & Eng. Rld. Cases, 392; Lawson, Com. Car., § 235.) And so it is held that the connecting carriers are entitled to the exemptions and liabilities in the special contract made by the initial carrier for the whole distance. (*Kiff v. Railroad Co.*, 32 Kas. 263; *Railway Co. v. Harwell*, 45 Am. & Eng. Rld. Cases, 359; Lawson, Com. Car., § 243.) The connecting company had an agent at the place of destination, upon whom written notice could have been served without difficulty or delay, and who could have inspected the dead hogs, as well as the injured, before they passed into the hands of the packers and beyond the possibility of examination. Such provisions are to receive a reasonable interpretation, and a substantial compliance with the contract on the part of the shipper is sufficient. (*A. T. & S. F. Rld. Co. v. Temple*, ante, p. 7; same case, 27 Pac. Rep. 98.) The circumstances of each case must determine how promptly notice must be given, and whether that which is given is reasonable, considering the purposes for which such contracts are made. The necessity for prompt notice was as great in this case as in the Goggin case, where it was said that "unless the notice was given immediately, it would be of no value to the defendant." Instead of giving notice before the removal of the hogs, as might reasonably have been done, the plaintiff postponed it until the 25th of January, nearly two weeks after the time when notice should have been given. In this respect, therefore, the testimony fails to meet the requirements of the instruction given by the court, and is insufficient to sustain the verdict and judgment.

Some other objections are made, which it is not deemed necessary to notice.

The judgment of the district court will be reversed.

All the Justices concurring.