Missouri Pacific Railway Company v. John H. Paine.

No. 723.

**1. Carriers of Live Stock—Contract for Notice of Damage Unreasonable.**—A contract with a railway company for the shipment of cattle contained a stipulation that as a condition precedent to the shipper's right to any damages occasioned in the transportation, he should give notice in writing of his claim therefor to the station agent, or a general officer of the road carrying the cattle to their destination, within one day after they arrived there; and that a failure to give such notice should bar any recovery for such damage. *Held*, that on its face the stipulation was unreasonable and invalid, and that it devolved on the railway company to show that it was reasonable in fact.

**2. Same—Evidence not Showing Contract for Notice Reasonable.**—Proof that the shipper, while at the point of destination (Chicago), saw and talked with the station agent there of the delivering road, does not conclusively establish that the contract for notice was reasonable; such proof failing to show that the shipper saw such agent within twenty-four hours after arrival of the cattle there.

**3. Negligence not Cause of Damage, when.**—Where the proof shows that if the cattle had arrived at their destination on time, it would have been after market hours for that day, so that they would necessarily have been held over until the time when they were actually sold on the next day, the negligence of the carrier in failing to get the cattle there on time could not have affected the price received for them.

Appeal from Denton. Tried below before Hon. F. M. Davidson.

R. C. Foster and A. E. Wilkinson, for appellant.—1. The court erred in holding that the special contract requiring notice to be given of the claim for damages was invalid. Railway v. Jackson, 3 Ct. App. C. C., sec. 41; also secs. 364, 392, 459; 2 Ct. App. C. C., secs. 136, 137, 324, 330, 496; Railway v. Harris, 67 Texas, 166; Railway v. Cornwall, 70 Texas, 614.

2. The proof did not warrant judgment for the item of $368.20 for damages by reason of decline in the market price of the cattle, as it showed that such damage did not result from delay on the part of the railway company. 3 Suth. on Dam., 223–227.

No brief for appellee has reached the Reporter.

TARLTON, CHIEF JUSTICE.—This is an appeal from a judgment of the County Court of Denton County, for the sum of $615.28, rendered February 28, 1889, in favor of appellee against appellant. The suit was for damages alleged to have been caused by the negligence and default of defendant, a common carrier, in the transportation by rail of 143 head of cattle, shipped by plaintiff on the 14th day of June, 1888, from Denton, Texas, to Chicago, Illinois. Two head of cattle, worth $50 and $40 respectively, are alleged to have been crippled and rendered worthless by negligent switching of cars at Chetopa and Sedalia. A delay of twenty-four hours in their transportation was alleged to have caused deterioration in the weight and grade and decline in the market price of the cattle to the extent of $517.20. Plaintiff also claimed $33 for extra feed bills caused by the delay.

The damages found by the court were itemized as follows:

" (1) The steer lost at Chetopa, $50; (2) the steer lost at Sedalia, $40; (3) the extra feed at Sedalia, $33; (4) the difference between the price obtained for said cattle on the 19th day of June, 1889, to-wit, $4.40 per 100 pounds, and the price said cattle could have been sold for on the 18th day of June, 1889, to-wit, $4.65 per 100 pounds, said difference being 25 cents on the 100 pounds, the weight of the 141 head at Chicago, to-wit, 147,280 pounds, at 25 cents, $368.20; (5) amount lost in weight on the fifth day said cattle were in transit, to-wit, 2820 pounds, at $4.40 per 100 pounds, $124.08; total, $615.28."

The defendant, in addition to the general issue, pleaded specially that the plaintiff had wholly failed, in compliance with its contract of shipment, to give notice of the loss as therein stipulated. By this contract the plaintiff agreed, that " as a condition precedent to his right to any damages or any loss or injury to his said stock during the transportation thereof, or previous to loading thereof for shipment, he will give notice in writing of his claim therefor to some general officer of defendant, or to its nearest station agent, or to the agent at the delivering station of the

railway which carries the stock to destination, or to the nearest station agent or general officer of such delivering road, before said stock is removed from the point of shipment or from the place of destination, and before such stock is mingled with other stock, and one day after the delivery of such stock at its point of destination and before the same have been removed or intermingled with other stock, to the end that such claim may be fully and fairly investigated; and that a failure to comply with the terms of this clause shall be a complete bar to any recovery of any and all such claims. The written notice herein provided for can not, and shall not, be waived by any person except such general officer or station agent, and by him only in writing.''

The defendant, in connection with this contract, alleged, that it had stations and station agents at Chetopa, Kansas, and Sedalia and Hannibal, Missouri; and that the Chicago, Burlington & Quincy Railway Company, its connecting line which transported the cattle from Hannibal to Chicago, Illinois, their destination, had stations and station agents and its general offices and officers in Chicago.

The trial court, hearing the case without a jury, held this contract unreasonable and invalid, and appellant complains of this conclusion as error.

The record contains no statement of facts. The court's conclusions of fact, however, with reference to the contract, are as follows:

'' 1. I find that said written and printed contract, under which plaintiff shipped said cattle, nowhere gives the names of any of their agents or general officers along their line of road over which plaintiff shipped said cattle. That plaintiff knew of no agent or general office of defendant at Chicago. Got a pass there of some man to come home on.

'' 2. That defendant had a station and station agent at Sedalia, Missouri, and Hannibal, Missouri, and a ticket agent at Chicago, Illinois, from whom plaintiff procured his pass to return to Denton.

'' 3. That defendant's line terminated at Hannibal, Missouri, where it connected with the Chicago, Burlington & Quincy Railway, to which line said cattle were transferred at that point and transported by said Chicago, Burlington & Quincy Railway Company to their destination at Chicago, Illinois; and that at Chicago said Chicago, Burlington & Quincy Railway had a station and station agent, whom plaintiff saw and talked with while in Chicago, and also that the general offices and officers of said Chicago, Burlington & Quincy Railway Company were also in Chicago.''

The concluding two of the foregoing findings were added by the court at the request of the defendant.

The contract in question as pleaded is upon its face unreasonable. It fails to state the name of the agent in Chicago to whom the notice was to be given. It required the plaintiff to leave his stock, on the arrival of the cars at the point of destination, and within twenty-four hours to seek and find the person to whom notice should be given, w:thout indi-

cating to him whether or where such person would be found, or at what hour he would be found at his place of business. It may well be conceived that a large corporation in an immense city has numerous agents engaged in different departments of its business other than the particular agent charged with the duty of investigating claims of the character here in question. We can understand how the shipper, under such circumstances, would interview one after another of these agents, only to be truthfully told by each agent interviewed that he was not authorized to pass upon such a demand.

We do not hold that a contract requiring the shipper to give notice is necessarily invalid, but we do hold that it is unreasonable and can not be enforced unless it be made to appear that the person to be notified is so conveniently accessible to the person who is to give the notice as that the latter can reasonably discharge that duty within the time limited by the contract. The burden rests upon the carrier to show that this condition exists, either by the terms of the contract indicating that the requisite information is thus furnished to the shipper, or that the latter is in fact possessed of such information, from what source soever it may come. See Railway v. Childers, ante, 302, in which Head, Associate Justice, elaborately reviews the decisions of our Supreme Court on this subject.

We therefore consider whether, under the facts found by the court, we are at liberty to say that the court below erred in concluding that the contract here relied upon is unreasonable.

These facts are that the defendant company had a ticket agent in Chicago, from whom plaintiff procured his pass to return to Denton, and that the Chicago, Burlington & Quincy Railway Company had also there a station and station agent whom plaintiff saw and talked with while in Chicago.

Under the terms of the contract, the plaintiff was required to give notice within twenty-four hours after the arrival of the stock. It does not appear that the transaction and conversations with the agents above mentioned were had within this time. If, in fact, these occurrences did take place within the limit stated, it would seem to follow that the defendant could have proved this fact. So it might well be concluded that, in fact, the shipper had not discovered these agents and that he was unable to discover them until after the lapse of the time within which the notice was required to be given. In any event, the facts stated will not justify us in reversing a finding by the lower court that the defendant had failed to fulfill the task imposed upon it of showing that the contract relied upon by it was reasonable.

The appellant in its next assignment of error complains of the fourth item of damages as not justified by the facts found by the court. This contention we sustain.

This item, for $368.20, is founded upon the difference between the market value of the cattle as they were actually sold on June 19, 1889,

and such market value if they had been sold on June 18, 1889. According to the findings of the court, the cattle left Denton, Texas, about 9 p. m. June 14, and reached Chicago about 7 or 8 o'clock a. m. June 19. If the carrier had used proper diligence, the cattle would have reached Chicago in about four days after their departure, or about 9 p. m. June 18. The cattle market in Chicago usually opened about 9 o'clock a. m. and closed about 12 o'clock m. or 1 p. m. Cattle arriving after the close of market hours would be held over until next day before being sold. It thus appears that the negligence of the carrier did not affect the price of the cattle with reference to the time of their sale. Had they reached Chicago within due time (about 9 o'clock p. m. on June 18th), their arrival would have been too late for the market of that day; nor could they have been sold before they actually were sold during the market hours of the next day, June 19th. The court elsewhere finds that the delay was "about one day," and on this finding it evidently predicates the conclusion that the owner was deprived of the market of the 18th of June. We are of opinion that the fixing by the court of the hours of departure from Denton and of arrival in Chicago determines more accurately the duration of the journey, and indicates that there was not a delay of a day nor the consequent loss to the plaintiff of a sale on June 18. We therefore deduct from the amount of the judgment below the fourth item of damages $368.20, and here render judgment for the difference, viz., $247.08, with legal interest from the date of the judgment below.

*Reformed and rendered.*

Delivered December 13, 1892.