## SOUTHERN RAILWAY COMPANY *v.* TOLLERSON.

1. A stipulation in a contract for the shipment of live stock, requiring "that, as a condition precedent to any right to recover any damages for loss or injury to said live stock," written notice of a claim therefor shall be given "before said live stock is removed or is intermingled with other live stock," is reasonable and valid.
2. The evidence showed that the plaintiff—the shipper—failed to comply with such a stipulation in this case, and therefore was not entitled to recover damages.

Argued June 24,—Decided December 19, 1907.

Action for damages. Before Judge Reagan. Henry superior court. December 22, 1906.

*Charlton E. Battle,* for plaintiff in error.

*Brown & Brown,* contra.

FISH, C. J. H. M. Tollerson brought an action against the Southern Railway Company, in which he claimed that he had delivered a carload of live stock to the defendant company at Shelbyville, Kentucky, for shipment to McDonough, Georgia; that the stock was in good condition when delivered to defendant and was in a depleted, exhausted, and famished condition when delivered to him at McDonough, from lack of food, water, and proper care and attention while en route. Upon the trial there was a verdict for the plaintiff; and the case is here for review upon a bill of exceptions sued out by defendant, in which error is assigned on the overruling of its motion for a new trial. There were several points made in the motion for a new trial and insisted on in this court, but we deem it necessary to deal specifically with one of them only, as it will control the case as made by the present record. Upon the trial the plaintiff put in evidence a written contract entered into between himself and the Southern Railway Company in Kentucky, Incorporated, for the shipment of the stock in question. In this contract there was the following stipulation: "That, as

a condition precedent to any right to recover any damages for loss or injury to said live stock, notice in writing of the claim therefor shall be given to the agent of the carrier actually delivering said live stock wherever such delivery may be made, and such notice shall be so given before said live stock is removed or is intermingled with other live stock." In *Southern Railway Company* v. *Adams,* 115 *Ga.* 705 (42 S. E. 35), it was held that such an agreement was reasonable, and that a consignor entering into the same is not entitled to recover against the carrier damages for loss or injury to the live stock unless it be shown that such notice shall be so given before said live stock is removed or contract. We are aware that contrary rulings have been made by a number of courts; but the weight of authority seems to be in accordance with such former ruling of this court, which, in addition to the cases cited when it was made, is supported also by the following: Baltimore & Ohio S. W. R. Co. v. Ross, 105 Ill. 54; Smith v. Chicago, R. I. & P. R. Co., 112 Mo. App. 610 (87 S. W. 9); Baltimore & Ohio R. Co. v. Hubbard, 72 Ohio St. 302 (74 N. E. 214); Eckert v. Pennsylvania R. Co., 211 Pa. St. 267 (60 Atl. 781, 107 Am. St. R. 571); Bellows v. Wabash R. Co., 118 Mo. App. 500 (94 S. W. 557); Hatch v. Minneapolis, St. P. & S. S. M. Ry. Co. (N. D.), 107 N. W. 1087; Louisville & Nashville R. Co. v. Landers, 135 Ala. 504 (33 So. 482).

The plaintiff testified: The stock were in good condition when they were shipped from Shelbyville. "They were in bad condition when they arrived at McDonough. They ran out of the car, or a lot of them did, with their tails wagging like you have seen sheep, and lots of them looked like they had been gutted. I paid $50.00 more for one of the horses than I did for the others [there were four horses and twenty-seven mules], but when they ran out of the car I could not tell which one it was. They all looked alike to me. I brought the stock to town and turned the mules in the pen. One of them died on Sunday. [They were delivered to him at McDonough Saturday afternoon about five o'clock.] On Monday morning another laid down and a lot of mules trampled over it. I got it up and worked with it, and they have been all the spring getting over it. On putting them to work they would give out. Their condition was caused by being on the car too long without feed and water. . . The Monday morning after the

stock arrived I called up the agent, Mr. Williams, and while talking with him and telling him, over the 'phone, about the mule being dead, he said, 'I have a feed bill against you.' . . . I could not ascertain the damage before the stock was unloaded. I had to take them out and put them in the pen before I could really examine them, and I did not know the damage until I had taken them out and put them in the pen. . . I put the stock in my stable when I brought them over from the depot, not with any other stock but in a separate department. They were in a separate part of the stable when I notified Mr. Williams of my claim for damages, and had not been mixed with any other stock then. . . I do not recollect when I made the written demand on the Southern Railway Company for damages for injury to my stock; I made one through my attorneys; I could not say positively when it was— four or five days afterwards. It was not when the suit was filed. I did not make any written demand myself on the Southern Railway Company. I could not tell that the filing of this suit was the only demand that I ever made. I do not recollect what I asked my attorneys to claim for me for damages; it was what they sued for. I made my claim to my attorneys four or five days afterwards, but I did not make any written demand myself. I do not know how my attorneys got at it—do not know whether they wrote the railway company about it or not, or whether they made any written claim or not. . . This stock was not intermingled with other stock, but has been since; they were removed from the depot to my stables. I kept them there, and afterwards sold them to other people."

E. S. Williams, sworn in behalf of plaintiff, testified as follows: "I am agent of the Southern Railway Company at McDonough. Mr. Brown, the plaintiff's attorney, filed a written claim with me for damages to this shipment of stock a month or two after they were received. . . I have not the writing that was given to me; I turned it over to the proper authorities of the railway company.

. . To the best of my recollection it was not filed with me until several months after the stock was received."

There was no other evidence whatever in reference to service of notice on the railway company of the plaintiff's claim for damages. It thus clearly appears, from the evidence submitted by the plaintiff on the trial, that the stipulation as to giving the written notice

of the claim for damages was not met within the time specified in the contract, and therefore a verdict was demanded in behalf of the defendant, and accordingly the court erred in not granting a new trial.

*Judgment reversed. All the Justices concur, except Holden, J., who did not preside.*