CHICAGO, R. I. & G. RY. CO. et al. v. DAL-
TON. (No. 763.)

(Court of Civil Appeals of Texas. Amarillo. April 24, 1915. Dissenting Opinion May 11, 1915. Rehearing Denied May 22, 1915. On Motion to Certify to Supreme Court, June 5, 1915.)

1. COURTS ⬉⟿97 — JUISDICTION — DECISIONS OF FEDERAL COURTS—AS AUTHORITY IN STATE COURT.

In a shipper's action for damages to an interstate shipment of live stock, shipped under a written contract, the decisions of the federal courts control, and the Court of Civil Appeals must follow them.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 329-333; Dec. Dig. ⬉⟿97.]

2. CARRIERS ⬉⟿228—INJURY TO LIVE STOCK—ACTION FOR DAMAGES—PLEADING AND PROOF—REASONABLENESS OF STIPULATIONS.

In an action for damages to a shipment of live stock from delay and rough handling, under a stipulation in the written contract that as a condition precedent to any claim of damages the shipper, as soon as he discovered any injury, should promptly give written notice to some general officer, claim or station agent, or to the agent at destination, or to some general officer of the delivering line, before removing the stock, and within one day after delivery, and the shipper's agreement that failure to give the notice should bar recovery, the carrier had the burden of showing that the stipulation, as to the particular shipment, was reasonable, and that it had an officer or agent at or near the place where the notice was to be given, and, where there was no such allegation and proof, the shipper was not required to prove notice or an excuse for not giving notice; and the fact that damages were known to the shipper, or the shipper's direction to a commission company to put in the claim, did not dispense with proof that there was an agent to receive notice.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 957-960; Dec. Dig. ⬉⟿228.]

Hendricks, J., dissenting.

On Motion to Certify to Supreme Court.

3. COURTS ⬉⟿247—COURT OF CIVIL APPEALS—CERTIFICATE TO SUPREME COURT—FEDERAL QUESTION.

Where the question involved in an action for damages to an interstate shipment of live stock, defended on the ground of the shipper's failure to give the notice of injury required by the written contract of shipment, was a federal question of which the Supreme Court of the United States had final jurisdiction, appellant, if the opinion of the Court of Civil Appeals was erroneous, had a plain, adequate, and complete remedy by due course of law, by proper application to the Supreme Court of the United States, so that it was not mandatory upon the Court of Civil Appeals to certify the case to the state Supreme Court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 487, 749, 751-754, 757, 759, 760, 762-764; Dec. Dig. ⬉⟿247.]

4. COURTS ⬉⟿247—COURT OF CIVIL APPEALS—CONCLUSIVENESS OF DECISION.

The decision of the Court of Civil Appeals on appeal from the county court is final, and a certificate to the Supreme Court does not lie, and, if the Supreme Court had jurisdiction by virtue of a dissent, appellant was not deprived of the remedy by petition for writ of error.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 487, 749, 751-754, 757, 759, 760, 762-764; Dec. Dig. ⬉⟿247.]

Appeal from Sherman County Court; J. W. Elliott, Judge.

Action by A. M. Dalton against the Chicago, Rock Island & Gulf Railway Company and another. Judgment for plaintiff, and defendants appeal. Affirmed.

N. H. Lassiter, of Ft. Worth (Moore & Powell, of Dalhart, and Gustavus & Jackson, of Amarillo, of counsel), for appellants. Jno. H. H. Stahl, of Stratford, for appellee.

HUFF, C. J. The appellee Dalton brought suit against the Chicago, Rock Island & Gulf Railway Company and the Chicago, Rock Island & Pacific Railway Company, to recover damages for alleged injuries to a shipment of cattle, consisting of 188 head shipped from Romero, Tex., to Kansas City, Mo., and for 46 head shipped from Stratford, Tex., to Kansas City, Mo.

The allegations of the petition allege that the shipment was upon a written contract of affreightment. The allegations of negligence consisted of delays, rough handling, and consequent damages. The appellants answered, setting up certain stipulations of the contract, denying liability, etc., among which the following stipulation was alleged:

"That as a condition precedent to claiming or recovering damages for any loss or injury to, or detention of live stock or delay in transportation thereof, covered by this contract, the second party, as soon as he discovers such loss or injury, shall promptly give notice thereof in writing to some general officer, claim agent or station agent of the first party, or to the agent at destination, or to some general officer of the delivering line before such stock is removed from the point of shipment, or from the place of destination, as the case may be, and before such stock is mingled with other stock, and such written notice shall in any event be served in one day after the delivery of the stock at its destination, in order that such claim may be fully and fairly investigated. It is agreed that a failure to strictly comply with all of the foregoing provisions shall be a bar to the recovery of any and all such claims."

There is no allegation in the answer, setting up that this stipulation was reasonable, or that appellants had a general officer, claim or station agent at the place of destination so that written notice could have been given such agent or officer. The facts in this case

will be considered sufficient to support the judgment of the court in finding negligence in the particulars alleged in the petition, and that by reason thereof the cattle were injured, and that the appellee suffered damages to the amount found by the court, $686.84.

The appellants introduced written contracts or receipts to the appellee, executed by the Chicago, Rock Island & Gulf Railway Company at Romero, Tex., which contract contained the provision above set out in their answer, and introduced no further testimony with reference to officers or agent being at the point of destination.

There was no notice in writing given by the appellee, or at least none proven. Appellee testified:

"I did not myself notify defendants or their agents at destination of my claims within one day of the arrival of the stock at destination. I instructed the commission company to do so, but do not know whether or not they did."

The appellants present two assignments of error, the second of which will be overruled without further discussion.

[1] The first assignment is to the effect that the court erred in rendering judgment for the appellee, he having brought suit on a written contract with the stipulation above named, and did not prove that he had given the notice as required by such provision or any excuse therefor. This being an interstate shipment, we recognize, since Congress has taken charge of interstate shipments, the decisions of the federal courts should control, and, when the courts of that jurisdiction announce the rule governing the case, it is our duty to follow it; but, where the rule is not established by the supreme tribunal, we must follow that rule which in our judgment comports with reason and justice, and we must confess a decided preference for the holdings of our own Supreme Court, than whom no more enlightened jurists have graced courts in other jurisdictions. We regard the following questions as being suggested by the record:

[2] Are the pleadings and evidence of the clause sufficient alone to show its reasonableness, or must the pleadings and evidence show, aliunde of the clause as applied to the particular shipment, that it is a reasonable stipulation? There is but little doubt, if any, that the Supreme Court of Texas holds that the burden rests upon the carrier to allege facts and to prove that the clause as applied to the particular shipment is a reasonable one. If this is not shown by the carrier, then there is no duty upon the shipper to prove the notice was given or prove an excuse for not doing so. It may be conceded, we presume, that the mere fact that the time is short will not render the clause invalid, and that the carrier may rightfully stipulate that it shall have the right to examine the cattle before they are removed, and that the Supreme Court of the United States would doubtless so hold, and that the decisions of that court tend in that direction. We do not understand that the Texas courts have held to the contrary; but, as we understand our courts, the stipulation is held reasonable or not under the facts and circumstances of each shipment, and the facts and circumstances rendering it reasonable must be alleged and proven by the carrier. Judge Stayton, in Railway Co. v. Harris, 67 Tex. 166, 2 S. W. 575, did express a doubt as to the validity of such a stipulation, but did not in terms hold it invalid; but held:

"The answer must present a defense to the case made by the petition. If the answer does not show that, under the facts existing, the limitation on the carrier's liability sought to be imposed by the special contracts was reasonable in its character, then the answer was not sufficient, and the court below properly sustained the demurrer. If a carrier sets up a claim to notice of a given fact as a consideration upon which its liability to a shipper is to depend, then it is incumbent upon it, when the notice was to be given to one of its own officers or agents, to show that it had an officer or agent at or near the place where the notice is to be given, in any case in which the shipper by the terms of the contract, through which notice is claimed, it to hold the property shipped, at the place of delivery, * * * until it can be inspected by some agent of the carrier. This would be especially true when the property to be inspected is intended for immediate sale at the place of destination, is perishable in character, likely to deteriorate in value by holding, and expensive to keep. If in such a case the carrier has not an officer or agent at or near the place where the property to be inspected is delivered, so that notice may be properly given, and an inspection, if desired, speedily made, then a contract requiring notice to be given to an officer or agent of the carrier is not reasonable in its character. The contract to give notice was not the entire contract. The notice was required to be given to an officer, or the nearest station agent of the carrier; and the station of such officer or agent with reference to the place from which the notice must necessarily come, and at which an inspection, if desired, would necessarily have to be made, would largely determine whether the contract was reasonable or not. The answer should have shown that the carrier had an officer or agent so situated that the contract to give notice to such officer or agent was reasonable. Under the averments of the petition, the place of delivery was beyond the line of the appellant's railway, in another state, and no presumption can arise that the carrier had an officer or station agent near the place of destination. If the contract were one valid, whether reasonable or not, the shipper would be bound by its terms; but, when its validity depends upon its being reasonable, the party who asserts its validity must allege the facts which make it so. It may well be doubted if such a contract as relied on in this case ought ever to be sustained. If a carrier seeks to make its liability to depend on notice to its officer or agent of a claim for damages, it would seem that the responsibility of determining who is an officer or agent of a carrier, within the meaning of the contract, should not be cast upon the shipper; but that the person, and his locality, to whom the notice must be given, ought to be made certain by the contract itself, and especially so when the carrier is a corporation, and the property is to be delivered beyond the line of its road, through another carrier. We are of the opinion that there was no error in sustaining the demurrers to the answers setting up the defenses we have noticed."

The locality of the agent or officer of the carrier is peculiarly within its knowledge,

and we think simple justice should require it to allege and prove such fact, and that the facts when so alleged should be sufficient to show that the stipulation requiring notice could have been reasonably complied with by the shipper, and, until such allegation and proof is made, there is no lawful stipulation shown requiring the shipper to prove notice or an excuse for not giving it. The court or jury should not be left to presume that the agent was at a place accessible, such as would render the requirement of notice to him reasonable; but the facts should be alleged and proven. The rule is announced by the Commission of Appeals, and approved by the Supreme Court of Texas, in the case of Railway Co. v. Greathouse, 82 Tex. 104, 17 S. W. 834:

"To prove that such conditions in a contract are reasonable is a burden resting upon the carrier, who must show, by proper pleadings and evidence, the existence of facts that call for an enforcement of the condition. There were no pleadings and proof whatever * . * * coming from the carrier." Railway v. Fagan, 72 Tex. 127, 9 S. W. 751, 2 L. R. A. 75, 13 Am. St. Rep. 776; Railway v. Paine, 1 Tex. Civ. App. 621, 21 S. W. 78; Railway v. Childers, 1 Tex. Civ. App. 302, 21 S. W. 76.

"Where a carrier relies on a special contract limiting its liability, the burden is on it, not only to show a valid special contract but also to allege and prove the facts and circumstances showing the stipulation to be reasonable." 4 Ruling Case Law, "Carriers," §§ 377, 378, 253; 6 Cyc. 506, 507 (b); 4 Elliott on Railroads (2d Ed.) §§ 1512, 1714; Hutchinson on Carriers, §§ 442–447.

We take it the rule is established in this state that the burden is on the carrier to allege and prove the stipulation is a reasonable one under the circumstances of the particular shipment, and, where the facts raise the issue of reasonableness, it is a question for the jury or court trying the same. 4 R. C. L. § 253; Railway Co. v. Davis, 88 Tex. 593, 32 S. W. 510; Railway Co. v. Stanley, 89 Tex. 42, 33 S. W. 109; Railway Co. v. Evans, 100 Tex. 190, 97 S. W. 466. Where a contract is shown to be reasonable, it may be the rule under the weight of the federal authorities that the burden is then on the shipper to show that he has complied with the stipulation by giving notice, or to prove an excuse for not doing so. In so far as we are informed, the Supreme Court of the United States has not passed upon the direct question presented in this record. It has been stated in general terms by that court that a carrier may provide limitations or qualifications if they are just and reasonable and do not exempt it from responsibility due to negligence. The Supreme Court of the United States did not hesitate to declare a provision of a ticket fixing the value of baggage at an arbitrary value illegal, because such provision by its terms, and construed in connection with an act of Congress known as the Harter Act, was unjust and unreasonable and for that reason void. The Kensington, 183 U. S. 263, 22 Sup. Ct. 102, 46 L. Ed. 190.

True, the conclusion so reached was from a construction given upon the stipulation without aliunde facts, except the act of Congress. In the case of The Queen of the Pacific, 180 U. S. 49, 21 Sup. Ct. 278, 45 L. Ed. 419, it was held that a stipulation for notice of any claim of loss within 30 days from date of shipment was not unreasonable as applied to a loss which was known to the consignor more than three weeks before the expiration of the stipulated time, since the enforcement of the stipulation would not work a manifest injustice. In discussing the question, Railway v. Harris, 67 Tex. 166, 2 S. W. 574, and Pacific Express Co. v. Darnell (Sup.) 6 S. W. 765, are cited, and, while not approved in terms, the court says the Harris Case was evidently decided upon its special facts. The facts set out in the opinion are substantially the facts in this case. That court, in The Queen of Pacific Case, supra, said:

"It is unnecessary to say that if, under the circumstances of a particular case, the stipulation were unreasonable, or worked a manifest injustice to the libelants, we should not give it effect."

In the Westminster Case, 127 Fed. 682, 62 C. C. A. 406, it is said:

"It (the stipulation) must be taken * * * as it stands, and held reasonable as a whole, which the attending circumstances must determine."

That court then held that the giving of the notice was an affirmative fact which must be proven by the libelant (plaintiff). That rule does not in our judgment in the least militate against the rule that the carrier must allege and prove, in the first place, that the stipulation, with the attending circumstances, must determine that it is reasonable. These cases to our mind indicate the rule is the same in the federal courts as in the Texas court. The carrier must show a reasonable stipulation. If the carrier had no agent at destination, we can think of no more unjust or unreasonable requirement than a stipulation requiring the shipper to give such agent notice of loss within one day, when there was no such agent. The contract in this case does not show whether there was or was not such an agent. This fact resting in the knowledge of the carrier, its failure to allege and prove that there was convenient such agent, we think the presumption should prevail there was none. This, as we understand, is the Texas rule, and, until the Supreme Court of the United States holds to the contrary, we believe we should follow the rule in this state, rather than the holdings of any other state, and specially do we do so for the reason that the rule to our mind is a just and a reasonable one and is supported by respectable authority, both court and text-writers. We cite the following federal authorities as in some measure supporting the Texas rule: Ormsby v. Union Pacific, 4 Fed. 170; Pac. S. S. Co. v. Bancroft, 94 Fed. 180, 36 C. C. A. 135; Kahnweiler v. Insurance Co., 67 Fed. 483,

14 C. C. A. 485. The case of Kidwell v. Oregon Short Line, 208 Fed. 1, 125 C. C. A. 313, recognized that the stipulation might become unreasonable under certain circumstances surrounding the shipment. It is there said:

"There was nothing in the circumstances, as disclosed by the record in the case at bar, to render the requirement of the notice negligible or impracticable, as in the case of C., R. I. & P. Ry. Co. v. Spears, 31 Okl. 469 [122 Pac. 228]."

While that court cited cases from other jurisdictions, its decision is based on the holding of the Supreme Court of Oregon, the state of origin of the action.

In Hatch et al. v. M., St. P. & S. S. M. Ry. Co., 15 N. D. 490, 107 N. W. 1087, Morgan, C. J., clearly states the rule which should control in the matter of pleading in cases of this character:

"The condition or stipulation referred to is not strictly a condition precedent, and it is not part of the cause of action. The cause of action is complete before this condition becomes operative. The cause of action is not created by the contract of the parties. The law controls what facts shall constitute the cause of action. If the law should provide for the notice in the same statute, defining what the cause of action should be, a different question would be presented. But the condition in this case is made by the contract of the parties, and the cause of action is defined by the common law. Hence the condition cannot operate as a part of the cause of action. It was therefore an unnecessary allegation of the complaint. A cause of action was completely stated without it. The condition was a limitation upon the right of the plaintiff to maintain the action and pertained to the remedy. It was therefore a matter of defense to be raised by answer, if at all. This court has recently so held in a case involving a similar condition. Kinney v. Brotherhood, etc., 15 N. D. 21, 106 N. W. 44."

See Maloy v. C. & N. W. Ry., 109 Wis. 29, 85 N. W. 130; Gatzow v. Buening, 106 Wis. 1, 81 N. W. 1003, 49 L. R. A. 475, 80 Am. St. Rep. 1; Meisenheimer v. Kellog, 106 Wis. 30, 81 N. W. 1033; Westcott v. Fargo, 61 N. Y. 542, 19 Am. Rep. 300; McNealy v. C., B. & Q. Ry., 119 Mo. App. 200, 95 S. W. 312; L. & N. Ry. v. Woodford, 152 Ky. 398, 153 S. W. 722, 153 Ky. 185, 154 S. W. 1083; A., T. & S. F. Ry. v. Baldwin, 53 Colo. 416, 128 Pac. 449; St. L., etc., v. Cumbie, 101 Ark. 172, 141 S. W. 939; Mo. Pac. Ry. v. Fagan, 72 Tex. 127, 9 S. W. 749, 2 L. R. A. 75, 13 Am. St. Rep. 776; Mo. Pac. Ry. v. Harris, 67 Tex. 166, 2 S. W. 574.

We think the fact that the cattle were shipped for market, and that the damages were known to the shipper, will not dispense with the proof that there was an agent sufficiently near to have presented the claim within the time specified; neither do we believe that the declaration of the appellee to the commission company to put in the claim with the agent conclusive or proof that there was such an agent. It may be that it is evidenced that the claim could have been presented for the damages within the time specified, but it is not proof that there was any such agent; but, as suggested, the presumption should prevail there was none or the appellants would have proven it. The case was tried before the court without a jury, and we must impute to him the finding that the stipulation, under the circumstances of this shipment, was unreasonable, and no notice thereunder was required.

So finding, the case will be affirmed.

HENDRICKS, J. (dissenting). In accordance with the live stock contract, pleaded by the carriers, and in evidence here, as set out in the majority opinion, the stipulation is based upon a freight rate, "less than the rate charged for shipments transported at carrier's risk," etc.

It is now a familiar subject, definitely adjudicated by the Supreme Court of the United States, that Congress has taken possession of the subject of liability of railway carriers, on account of interstate shipments, and the Interstate Law, particularly including the Carmack Amendment, and the rules of decisions prevailing in the federal courts, in regard to the interpretation and application of said law, supersede all laws and policy of any state, embracing said subject. Adams Express Co. v. Croninger, 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257; Railway Co. v. Miller, 226 U. S. 513, 33 Sup. Ct. 155, 57 L. Ed. 323; Railway Co. v. Carl, 227 U. S. 639, 33 Sup. Ct. 391, 57 L. Ed. 683; M., K. & T. Ry. Co. v. Harriman Bros., 227 U. S. 657, 33 Sup. Ct. 397, 57 L. Ed. 690.

The Supreme Court said, in the case of M., K. & T. Ry. v. Harriman Bros., supra, construing the Hepburn Act, and the Carmack Amendment:

"The validity of any stipulation in such a contract which involves the construction of the statute, and the validity of a limitation upon the liability thereby imposed, is a federal question to be determined under the general common law, and, as such, is withdrawn from the field of state law or limitation."

The provision in the contract, requiring notice of a claim for damages, in the case of Mo. Pac. Ry. Co. v. Harris, 67 Tex. 166, 2 S. W. 575, is as follows:

"Said party of the second part further agrees that, as a condition precedent to his right to recover any damages for any loss or injury to said stock, he will give notice in writing of his claim therefor to some officer of said party of the first part, or its nearest station agent, before such stock is removed from the place of destination above mentioned, or from the place of the delivery of the same to the party of the second part, and before such stock is mingled with other stock."

The opinion of the majority of the court in the present case is practically based upon the Harris Case, supra, as one of controlling influence, determinative of the common law upon this subject. In that cause Justice Stayton said that it was contemplated that the animals should be transported over the line of the appellant's railway, which did not extend to the place of destination, and

that from the end of the initial carrier's line they should be transported over another railway, through the state of Illinois, to the destination.

As disclosed by the opinions of the Supreme Court of the United States, above cited, under the Hepburn Act and the Carmack Amendment, we know that the identity, as well as the agency, of all carriers, is complete from the initial to the delivering carrier—the agent of the last carrier is now, under the law, the representative of the initial carrier for all purposes relative to the interstate shipment, as much so as if he were in the direct employment of that carrier. The erstwhile stipulations of several liability of the different connecting carriers transporting the shipment are now void under the Carmack Amendment. One of the dominating features of the act is the prescribed issuance of a written bill of lading, or receipt for the goods, by the initial carrier, and another intermediate carrier cannot impose upon a shipper an additional contract while in the course of transportation—the same is without consideration. The interstate carrier may make reasonable stipulations for its protection, but not permitted, of course, to contract against its own negligence. In this case the Chicago, Rock Island & Gulf Railway Company originated the shipments (both shipments accompanied by the owner, the shipper), and the Chicago, Rock Island & Pacific delivered the shipments at destination (Kansas City, Mo.). One shipment arrived between 6 and 7 a. m., of one day, and the other about noon, or a little after, of another day. The shipper knew then the injury to his cattle on account of the treatment in the course of transportation, and was acquainted with the shrinkage per head, and the damage in dollars per animal. He said that he did not himself make a presentation of his claim within 24 hours, as prescribed by the contract, but instructed his agent, the commission company, to whom the cattle had been consigned, to make the claim, but did not know whether it had been done.

When the cattle arrived at destination, he knew approximately the shrinkage and injury, as much so as he did when he gave his opinion under oath as to the injury to the cattle and the resultant damage to him when they arrived at destination; and I am only discussing that damage and injury within the purview of this contract, and the amount of which, I, of course, do not question. If I understand the meaning of the two contracts —the stipulation in this record, and the one in the Harris Case, supra, passed upon by Justice Stayton—they are essentially different. In the Harris Case the shipper was required to present his claim to some officer or agent of the initial carrier, or its nearest station agent, before the stock was removed from the place of destination, and before the same was mingled with other stock, with the attendant condition that the initial carrier's railway did not reach the place of destination; and Justice Stayton said that the place of delivery being beyond the line of the initial carrier, and in another state, no presumption can arise that the initial carrier had an officer or station agent near the place of destination. The stipulation in this record prescribes that the shipper shall give his notice, either to a general officer, claim agent, or station agent of the first party, or to such representatives of the delivering carrier as well, before the stock is removed from the place of destination and mingled with other stock, to be served in one day after the delivery of said stock at its destination.

I think to say that it could not be presumed that the Chicago, Rock Island & Pacific, which delivered these cattle at destination, did not have a station agent at destination, upon whom notice could be served, or some subagent within the same office, every hour and every minute of the day, is wholly untenable; as much so as to say that some prominent bank at Kansas City, Mo., did not have a teller in its banking house during the period of banking hours. It may be said that the answer in this cause should still show that, notwithstanding it may be presumed that the carrier had an agent at destination, such agent was so situated and was so accessible that the contract to give notice to such representative was reasonable. We are to presume that the shipper knew the contract; and, accompanying the cattle, his testimony shows, as to the injuries I am considering, he was acquainted with the accrued injury to the cattle at destination on account of the negligence of the carrier in transportation, and such shipper must be treated as a man of ordinary intelligence with a reasonable capacity to "move" under the condition confronting him; and without knowing how to argue it, it seems to me that viewing a shipper as of that standard (if the carrier had a station agent at Kansas City, Mo.), with any kind of a "move" on him, he could present the notice in writing of the claim for damages, at the office of the station agent, within the 24 hours and have a number of hours to spare. And if the agent, or some one for him, did not inspect the cattle commensurate with the immediate necessity to so do, that would not be the shipper's fault.

Neither have we the question in this case, as was in the Harris Case, of casting the burden of responsibility upon the shipper, of determining the character of the agent within the meaning of the contract, upon whom to serve the notice. When the contract says delivery to the station agent of the delivering line, the shipper would certainly know the position of a station agent at destination. Wichita Falls & Western Ry. Co. v. Koch, 47 Kan. 753, 28 Pac. 1014. And I think an agent at destination at its station, whether handling exclusively freight or passengers, at such station, is its station agent within this contract.

As stated, I do not think we are concerned in this record with injuries of an undeveloped nature which could not be determined before the stock was removed from the point of destination, as in the case of Ormsby v. Union Pacific Ry. Co. (C. C.) 4 Fed. 170, where it is held that the contract was of no effect as to sickness, the extent of which could have been known for some time after the removal of the stock from the car; and likewise in the case of Railway Co. v. Harwell, 91 Ala. 340, 8 South. 649, where the shipper did not discover, and by ordinary diligence could not have discovered, the injury and its extent before the animals were removed; also, the case of Giles v. Atchison, Topeka & Santa Fé Ry. Co., 92 Kan. 322, 140 Pac. 875, where the court speaks of an exception to the rule where the shrinkage resulted from the cattle having to be carried to the next day's market as to which notice of loss was unnecessary. The case of Railway Co. v. Wright, 78 Kan. 94, 95 Pac. 1132, by the Supreme Court of Kansas, affords a discussion of exceptions and distinctions with reference to these matters. There are many cases holding that a carrier is entitled to notice of a claim for damages, for the purpose of protection to it, before the cattle are removed from destination and mingled with other stock, on the theory that while the matter is still fresh, and for the purpose of instituting inquiries and furnishing itself with information on the subject of its liability and the extent thereof.

The Circuit Court of Appeals of the Ninth Circuit, in the case of Kidwell v. Oregon Short Line Ry. Co., 208 Fed. 3, 125 C. C. A 313, expressed it in this manner (referring in this language to the right of the shipper to examine the cattle):

"If, on arrival of live stock at destination, the shipper who, as in this case, accompanies them, finds that they have been injured by the negligence of the carrier, it is a reasonable provision of the shipping contract that he give notice to the carrier, of the extent, nature, and amount of his claim for damages, and that this shall be done before the stock are mingled with other stock, in order that the carrier may have the opportunity to make timely investigation and protect itself against fictitious or imaginary claims."

As another illustration, I cite the case of Railway Co. v. Ladd, 33 Okl. 160, 124 Pac. 462, involving a 50 hours' delay to Kansas City, and a loss of extra flesh to the cattle, at 50 pounds per head. The court said:

"From the very nature of the injuries alleged to have been inflicted upon the cattle, it must have been apparent at once upon their arrival at their destination that they were seriously damaged, and there was nothing to prevent plaintiff from making the necessary claim, and give the railroad company an opportunity to examine the livestock before it was removed from their premises and mingled with other cattle."

Justice Brown, of the Supreme Court of the United States, in the case of The Queen of the Pacific, 180 U. S. 49, 21 Sup. Ct. 278, 45 L. Ed. 422, said, in speaking of the case of Railway v. Lockwood, 17 Wall. 357, 21 L. Ed. 627:

"It was held by this court that common carriers may impose almost any just and reasonable limitation upon their common-law liability, not amounting to an exemption from the consequences of their own negligence. The methods of transportation have changed so radically during the century which has just closed that it seems almost necessary to the proper protection of a carrier, in transacting the enormous business of railway and steamship lines, that he should have the power by just and reasonable limitations, incorporated in his contract or brought to the attention of his shippers, to place some restrictions upon the unlimited liability of the common law," etc.

The justice mentioned particularly articles of great value which are carried without information of their character, and then further says:

"That persons intending to make claims for losses should manifest their election to do so as soon as the circumstances can by reasonable diligence be ascertained. The law recognizes the fact that the measure of liability originally applied to a carter's wain or a waterman's hoy may often be illy adapted to the exigencies of modern commerce."

In this cause the federal Supreme Court cites the Harris Case and the case of Pacific Express Company v. Darnell (Sup.) 6 S. W. 765, and I do not at all construe its opinion as impliedly approving either of the cases in any manner.

The case of Goggin v. Kansas Pacific Railway Co., 12 Kan. 324, and quoted from in the opinion, is cited by the Supreme Court of the United States argumentatively as sustaining the position of the court in deciding the particular cause; the Goggin Case being one requiring notice of damage to live stock, even before the stock was unloaded from the cars, and though the question of pleading that the carrier had an agent and the character of same, upon whom notice could be served, was not involved, the tendency of the Goggin Case is in entire opposition to the tendency of the Harris Case as applied to this case, and the decisions of the Supreme Court of this state, following it—that is, if you say that the Harris Case is the same as this case upon the facts. The Kansas Supreme Court said:

"The defendant (the carrier) was engaged in transporting great numbers of cattle over its road, which were shipped further to market, or so commingled with other stock that it would be impossible to distinguish one car load from another, unless attention was called to them immediately; and the object of the notice was to relieve the company from false and fictitious claims, by having an inspection of the cattle before they were removed or mingled with other cattle, and proper damages ascertained and allowed—of which reasons the plaintiff had full knowledge, and still chose to ship at reduced special rates. The reasons are cogent, and we are unable to see how it contravenes public policy that a special contract at reduced rates should stipulate that reasonable notice of injury should be given."

The Supreme Court of the United States particularly quoting this language from the case:

"The parties were competent to make the contract and did make it, and it must be held good unless it is contrary to public policy"— which the Kansas Supreme Court held that it was not.

The cattle shipping cases hereinafter cited by me to my mind clearly establish the proposition that, if the contract is reasonable, the carrier is entitled to notice at destination, before the stock are removed or mingled with other stock, of the claim for damages. Some of the courts and the decisions cited seem to treat contracts of this character as reasonable without discussion, as illustrated by the case of Clegg v. Railway Co., 203 Fed. 971, 122 C. C. A. 273, decided by the Circuit Court of Appeals of the Eighth District.

A libel case, in admiralty (The Westminster, 127 Fed. 681, 62 C. C. A. 406), by the Circuit Court of Appeals of the Third Circuit, bears upon this question. The case was one to recover damages for injury to merchandise, and the bill of lading provided that neither the shipowner, nor his agents, or servants, should be liable for any claim, "notice of which is not given before the removal of the goods." The court said:

"No doubt the consignees were entitled to a suitable opportunity to make an intelligent claim, but they had it. Whatever may be the case where the injury is latent and the liability doubtful, neither can be alleged of what, on the face of things, appeared here."

What appeared upon the face of things, as I construe the case, was the condition that:

"It was known at once, on the arrival of the ship and the discharge of the cargo, that the goods were seriously damaged. * * * There was nothing * * * to prevent the parties interested from * * * making the necessary claim. * * * It is true (said the court) that, even with this construction, the time limit is a short one, but not so short in the present instance, as is shown above, as to abridge unduly the rights of the parties. Provisions equally stringent have been sustained in several cases. In Moore v. Harris, L. R. 1 App. Cas. 318, and in Angel v. Cunard Steamship Co. (D. C.) 55 Fed. 1005, the condition—the same as here— was for notice before removal. So was it, with regard to live stock shipments, in Southern Ry. v. Adams, 115 Ga. 705, 42 S. E. 35; Wood v. Southern Ry., 118 N. C. 1056, 24 S. E. 704; Wichita Ry. v. Koch, 47 Kan. 753, 28 Pac. 1013; and Rice v. Kansas Pacific Ry., 63 Mo. 314. While in Kyle v. Buffalo R. R., 16 U. C. C. p. 76 (24-hour limit); in St. Louis R. R. v. Hurst, 67 Ark. 407, 55 S. W. 215 (a 30-hour limit); in Lewis Ry. v. Great West Ry., 5 Hurlst. & Norm. 867, and Moore v. Great Northern R. R., L. R. Irish, 95 (a three-day limit); in Black v. Wabash R. R., 111 Ill. 351, 53 Am. Rep. 628 (one of five days)—were all enforced."

While, under the condition of the pleadings and evidence here, I am not concerned with the burden of proof; however, as to the question of the burden of proof in giving the notice, the Circuit Court in that cause said:

"The confusion, if any (upon this subject), grows out of supposing that want of notice was to be proved in the first instance by the respondent. The giving of notice was an affirmative fact peculiarly within the knowledge of the libelants (the plaintiffs), both with regard to the time when, and the agent or representative of the shipowners to whom, it was given; and, the want of it having been set up in the answer, * * * it was incumbent on the libelants to prove it, as a condition precedent to the right to recover, * * * even if the stipulation could be regarded in the nature of the statute of limitations, * * * which it is declared in Express Co. v. Caldwell [21 Wall. 264], 22 L. Ed. 556, that it is not, still, having been pleaded, and the libelants thereby notified that it would be relied upon, they were bound by every rule to show compliance, or that which would excuse it, or be barred."

Since the act of March 3, 1891, establishing the Circuit Court of Appeals, the Supreme Court of the United States has no jurisdiction to review the judgment of the Circuit Court in admiralty causes by appeal or upon a writ of error. They have to be certified to the Supreme Court by the Circuit Court, or the whole case may be required by the Supreme Court to be sent up by certiorari, issued for that purpose, or otherwise. The Paquete Habana, 175 U. S. 677, 20 Sup. Ct. 290, 44 L. Ed. 320; Oregon Ry. & Nav. Co. v. Balfour, 179 U. S. 55, 21 Sup. Ct. 28, 45 L. Ed. 82; United States v. The Three Friends, 166 U. S. 1, 17 Sup. Ct. 495, 41 L. Ed. 897. The Supreme Court of the United States granted the writ in The Queen of the Pacific, but denied it in The Westminster.

From the array of cases upon the subject, of notice, before cattle are removed from destination, I do not think it can be said, because the cattle are intended for immediate sale, for that reason, of itself, the carrier is not entitled to notice. Hence, if upon arrival at destination the shipper and owner accompanying the cattle knew of the damage (and it is clear to me in this case that he did), and if it should be asserted that the delivering carrier in this case had a station agent at destination upon whom notice could have been served, and that the shipper, as a reasonably intelligent man, could, at Kansas City (which we judicially know is a large commercial center, Parks v. Jacob Dold Packing Co., 6 Misc. Rep. 570, 27 N. Y. Supp. 289), within a reasonably short time, could have notified some station agent or some one in his office under him, of said claim, then the carrier is entitled to notice. Except as to the question of waiver, and excluding the cases when the injury is of such a character, as of an undeveloped nature, or where the shipper is unable to inform the carrier of the injury, which do not come within the purview of the contract, in the very nature of things, I am unable to conceive of supervening conditions, where the shipper knows the injury when he arrives at destination with his stock, which would prevent him from giving the notice, as that such supervening conditions would make the contract unreasonable under the decisions, except the one of not being able to find the agent upon whom to serve the notice; and being convinced in this character of case, and under the contract, from the "swing" of the law

upon the subject, that such a position is untenable, I respectfully dissent from the majority holding.

I submit the following authorities, some of which are already cited, upon interstate shipments, which I think, when tested, bear out the contention made here, whatever one may think of the policy of such a rule—with which I am not concerned: Clegg v. St. L. & S. F. R. Co., 203 Fed. 971, 122 C. C. A. 273; McElvain v. Railway Co., 176 Mo. App. 379, 158 S. W. 465; Giles v. Atchison, Topeka & Santa Fé, 92 Kan. 322, 140 Pac. 875; Missouri Pacific R. Co. v. Park, 66 Kan. 248, 71 Pac. 586; St. L., I. M. & S. Ry. Co. v. Shepherd (Ark.) 168 S. W. 137; Railway Co. v. Ayers, 63 Ark. 331, 38 S. W. 515; Smith v. Chicago, Rock Island & Pacific, 112 Mo. App. 610, 87 S. W. 9; Owen v. Louisville & N. R. Co., 87 Ky. 626, 9 S. W. 698; Southern Ry. Co. v. Tollerson, 129 Ga. 647, 59 S. E. 799; Pavitt v. Lehigh Valley R. Co., 153 Pa. 302, 25 Atl. 1108; Western Ry. Co. v. Harwell, 91 Ala. 340, 8 South. 649; Parrill v. Cleveland, C., C. & St. L. R. Co., 23 Ind. App. 638, 55 N. E. 1026; Selby v. Wilmington & Western, 113 N. C. 588, 18 S. E. 88, 37 Am. St. Rep. 635; Austin v. Railroad, 151 N. C. 137, 65 S. E. 757; Wichita & Western Railroad v. Koch, 47 Kan. 753, 28 Pac. 1013; Southern Ry. Co. v. Adams, 115 Ga. 705, 42 S. E. 35; Kidwell v. Oregon Short Line Ry. Co., 208 Fed. 3, 125 C. C. A. 313; Railway Co. v. Cake, 25 Okl. 227, 105 Pac. 322.

### On Motion to Certify to Supreme Court.

HUFF, C. J. [3] The motion to certify is based upon the dissent of Mr. Justice Hendricks. The question involved is a federal question, of which the Supreme Court of the United States has final jurisdiction. If the opinion of the majority is erroneous, appellant has a plain, adequate, and complete remedy by due course of law, and by proper application to the Supreme Court of the United States may obtain the relief desired. We therefore do not believe it to be mandatory upon us to certify. State v. Fisher, 94 Tex. 491, 62 S. W. 540.

[4] This being a county court case, we have final jurisdiction on questions arising under the laws of this state, and hence do not recognize it as being our duty to certify. Herf v. James, 86 Tex. 230, 24 S. W. 396; Kidd v. Rainey, 95 Tex. 556, 68 S. W. 507; Miller v. Mosely, 91 S. W. 648; Day v. Mercer, 175 S. W. 764.

If the Supreme Court has jurisdiction by virtue of the dissent, then appellant is not deprived of the remedy by petition for writ of error. We do not believe a certificate to the Supreme Cour' of this state would settle the federal question involved, for at last the Supreme tribunal of the United States would have jurisdiction over the question. The motion to certify will be overruled.